471 F.2d 1157
 20 Wage & Hour Cas. (BN 1131, 70 Lab.Cas. P 32,835
 George WAINSCOAT, Plaintiff-Appellant,
v.
REYNOLDS ELECTRICAL & ENGINEERING CO., INC., a corporation,
Defendant-Appellee.
Joe HARLAN et al., Plaintiffs-Appellants,
v.
REYNOLDS ELECTRICAL & ENGINEERING CO., INC., a corporation,
Defendant-Appellee.
 No. 71-1587.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 5, 1973.
 
 1
 Bruce L. Woodbury (argued), of Rogers, Whitney, Lea & Woodbury, Las Vegas, Nev., for plaintiffs-appellants.
 
 
 2
 William F. Spaulding (argued), Bette Bardeen Gallo, of Gibson, Dunn & Crutcher, Los Angeles, Cal., John L. Thorndal, of Austin, Thorndal & Liles, Las Vegas, Nev., for defendant-appellee.
 
 
 3
 Before WRIGHT and WALLACE, Circuit Judges, and CRARY,* District Judge.
 
 CRARY, District Judge:
 
 4
 Appellants Wainscoat, Baker, Henry, Wells and Morrison claim to be entitled to overtime compensation for work in excess of forty hours per week during various monthly periods from October, 1965, through 1967 under the provisions of the Fair Labor Standards Act, 29 U. S.C. Secs. 201 et seq. The case was tried in October, 1970. No evidence was presented as to the claim of appellant Harlan.
 
 
 5
 Each of the appellants, Wainscoat, Baker, Henry and Wells, during the time involved, worked for appellee Reynolds Electrical & Engineering Co., Inc., a corporation, (REECo) as an "Operations Superintendent, Drilling". Appellant Morrison worked for REECo as a "Rig Superintendent" from October 25, 1965, to January 3, 1967, for which period he claims overtime compensation. The overtime hours claimed by the appellants varied from 395 to 952.
 
 
 6
 The four appellants who became Operations Superintendents, Drilling, had previously been working for hourly pay as "directional drillers". Their weekly wages as Superintendents was $268.00. There were small increases which are of no significance to the case. Morrison, during the period of his claim, received a weekly salary of from $254.00 to $266.80.
 
 
 7
 During the relevant time, Title 29, U. S.C. Sec. 207(a)(1), provided for overtime compensation for work in excess of forty hours per week. Section 213(a)(1) exempts from the coverage of Section 207(a)(1) "any employee employed in a bona fide executive, administrative, or professional capacity, * * * (as such terms are defined and delimited from time to time by regulations of the Secretary) * * *."
 
 
 8
 The trial court held that the defendant sustained its burden of proof and that the appellants met all the requirements of both the "long" and "short" tests of the "executive" exemption. These tests are set forth in 29 Code of Federal Regulations, Sec. 541.1 (1967).[1]
 
 
 9
 The long test appears in paragraphs (a) through (f) of Section 541.1 of the Regulations, supra, and involves some six qualifying conditions.
 
 SHORT TEST
 
 10
 The short test appears in paragraph (f) of Section 541.1 and provided in 1967 as follows:
 
 
 11
 "* * * Provided, that an employee who * * * is compensated on a salary basis at a rate of not less than $150 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section."
 
 
 12
 29 C.F.R. Sec. 541.1 (1967).
 
 
 13
 It is to be noted that the Act was amended in 1970 to increase the pertinent weekly wage from $150 to $200. See Footnote 1.
 
 
 14
 The parties agree that the appellants were compensated at a rate substantially in excess of the $150 minimum but the appellants urge that they were not paid on a salary basis. 29 C.F.R. Sec. 541.118.[2]
 
 
 15
 Three of the appellants testified that they received the same salary every week regardless of the number of hours worked, even for weeks they worked less than forty hours. It is the practice of REECo to convert the salaries of all employees to an hourly rate for bookkeeping purposes to facilitate the use of data processing machines that prepare the payroll.
 
 
 16
 There is substantial evidence that the payment of all appellants was on a salary basis and in excess of $150 per week.
 
 
 17
 The second condition of the short test requires that the employee's primary duty must consist of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof. The interpretations of the terms "management" and "primary duty" are found in 29 C. F.R. 41.102, 103.[3]
 
 
 18
 The position of Operations Superintendent was created for the purpose of planning, coordinating and supervising the directional drilling program and the work of the directional drillers on a twenty-four hour basis. It was the duty of the superintendent to maintain close liaison with each of the user agencies, i. e., the companies employing the services of REECo, which included obtaining the necessary information from the user to be sure the operation was accomplished in accordance with the user's wishes and to coordinate any changes with the user's representative on the job site. His managerial duties also included the determination of what tools and equipment would be used and the manpower required to perform the job. He was also required to plan and coordinate the directional drilling operation with the rig superintendent and had under his supervision the on-the-job training of directional drillers, who were hourly employees, and giving complete critiques of each man's performance. Additional duties involve participation in frequent office conferences with other supervisory personnel in which job problems, continuity, manpower and availability of equipment, were discussed and decisions made.
 
 
 19
 Morrison's management responsibilities for the over-all drilling program, including the supervision of his crew, the use of his equipment and the recovery operation, made his primary duty consist of the management of his department and his position was one which required the exercise of frequent discretionary powers. This conclusion appears to be true although there was some variance in his work as between "pre-shot" and "post-shot" periods.
 
 
 20
 The duties of all of the appellants conform to the management requirement as found by the Supreme Court in Walling v. General Industries Co., 330 U.S. 545, at 549-550, 67 S.Ct. 883, 91 L.Ed. 1088 where the Court held that three operating engineers in a powerhouse, who exercised continuous supervision of trained persons and were required to maintain constant observation of all machinery in the powerhouse and to make regular inspection and necessary repairs, were performing management functions and were properly determined to be in executive status. See also McReynolds v. Pocahontas Corp., 192 F.2d 301, at 302-303 (4 C.A.1951), and Phillips v. Federal Cartridge, 69 F.Supp. 522 at 526 (D.C. Minn., 1947).
 
 
 21
 In the Phillips case, the Court held the plaintiff should be classified as an executive although he engaged, to some extent, in ordinary work performed by employees subordinate to him, which work was a part of his supervisory duties.
 
 
 22
 This Court ruled, in the case of Hoyt v. General Insurance Company of America, 249 F.2d 589 (9 Cir., 1957), that the plaintiff came within the exemption to Section 7 of the Fair Labor Standards Act of "administrative employee" as provided by Section 13 of the Act, stating at page 590 of the opinion:
 
 
 23
 "The authorities are uniform in holding that the question of whether an employee comes within one of the exemptions of the Act is an ultimate question of fact to be decided by the trier of the facts." (Citing cases.)
 
 The Court goes on to say:
 
 24
 "The findings of the court below are binding upon this court unless they are clearly erroneous."
 
 
 25
 We conclude that the record supports the finding of the trial court that the primary duties of the appellants were management and that the major portion of their time was spent in exempt functions.
 
 
 26
 The drilling department and the directional drilling were completely separate departments with separate management and this is true although the "rig superintendent" (Morrison) supervised and managed the rig crew of twenty men and the equipment involved in the performance of the over-all drilling operation. He was not, however, responsible for the directional drillers or their mission and they were not members of the rig crew nor under the supervision or direction of the rig superintendent.
 
 
 27
 There is substantial evidence in the record to support the determination of the trial court, as stated in its written decision and findings of fact, that each of the appellants met the qualifications of an "executive", as defined in the Regulations, under the short test, including the third condition, to wit, that they customarily and regularly directed the work of two or more other employees. It is also to be remembered that it was the choice of the appellants to take the positions of Operations Superintendents, Drilling, as against remaining in a union classification with overtime pay.
 
 
 28
 The appellants contend that during more than fifty per cent of their time they were engaged in manual labor, that the operations superintendents performed essentially the same duties they had performed as directional drillers, that they should properly be classified as craftsmen and, therefore, they were erroneously determined to be executives under either the short or long test.
 
 
 29
 We conclude that although several of the duties performed by the operations superintendents were the same as when working as directional drillers at hourly wages, their new duties as superintendents primarily consisted of management and supervision of the directional drilling department on the respective job sites. There was substantial manual labor performed by the operations superintendents but it was, in major part, in the performance of their highly technical and discretionary duties which their expertise in the directional drilling operation qualified them to perform, as well as in the on-the-job training of trainees working in the field. It appears that the primary duties of the superintendents were managerial and supervisory and that the manual labor performed did not occupy fifty per cent of their working time.
 
 
 30
 The claim of appellants that they were "craftsmen", and therefore not subject to the executive classification under the short test, is based on the provisions of 29 C.F.R. Sec. 541.119(c), which provides:
 
 
 31
 "(c) Mechanics, carpenters, linotype operators, or craftsmen of other kinds are not exempt under the proviso no matter how highly paid they might be."
 
 
 32
 Paragraph (a) of that Section refers to the short and long tests and provides, among other things:
 
 
 33
 "* * * If an employee qualifies for exemption under this proviso, it is not necessary to test his qualifications in detail under paragraphs (a) through (f) of Sec. 541.1." See Footnote 1.
 
 
 34
 It is true that high salary alone does not qualify one for the executive classification. However, from the fact that the operations superintendents in their previous work as directional drillers were members of a craft union, it does not follow that they were then or are now "craftsmen" within Section 541.119(c), supra. Their managerial responsibilities included the control and supervision of the directional drilling, which required discretion and decision making of the highest technical order and which only some thirty men in the world possessed in ability comparable to the four appellants here involved. These qualifications, plus the evaluation of geographical conditions and other intangible factors as to which it was necessary that these appellants exercise their expert discretion, would not place them in the classification of mechanics, carpenters and linotype operators. There is substantial evidence to support the conclusion that these Operations Superintendents, Drilling, were not "craftsmen" under the Regulations.
 
 
 35
 We hold that the requirements of the short test were met as to each of the appellants and in so holding the Court does not reach the issue as to whether the appellants met the conditions of the long test.
 
 
 36
 The appellants' remaining contention that they are entitled to liquidated damages, the Court determines to be without merit.
 
 
 37
 The judgment is affirmed.
 
 
 
 *
 Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Sec. 541.1 Executive. The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the Act shall mean any employee:
 (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
 (b) Who customarily and regularly directs the work of two or more other employees therein; and
 (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
 (d) Who customarily and regularly exercises discretionary powers; and
 (e) Who does not devote more than 20 per cent, or, in, the case of an employee of a retail or service establishment who does not devote as much as 40 per cent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section:
 Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment or who owns at least a 20-percent interest in the enterprise in which he is employed; and
 (f) Who (except as otherwise provided in Sec. 541.5b) is compensated for his services on a salary basis at a rate of not less than $125 per week (or $115 per week, if employed in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities:
 Provided, That an employee who (except as otherwise provided in Sec. 541.5b) is compensated on a salary basis at a rate of not less than $200 per week (or $150 per week, if employed in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.
 [32 F.R. 7824, May 30, 1967, as amended at 35 F.R. 885, Jan. 22, 1970]
 
 
 [2]
 Sec. 541.118 Salary basis. (a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent, basis a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work
 (1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing and able to work, deductions may not be made for time when work is not available.
 (2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences. * * *.
 
 
 [3]
 Sec. 541.102 Management. (a) In the usual situation the determination of whether a particular kind of work is exempt or nonexempt in nature is not difficult. In the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption
 (b) For example, it is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.
 Sec. 541.103 Primary duty. A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in mangement would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties are compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty. In the data processing field an employee who directs the day-to-day activities of a single group of programers and who performs the more complex or responsible jobs in programing will be considered to have management as his primary duty.
 [36 F.R. 22977, Dec. 2, 1971]