**Larry WORTHINGTON, Roger Cameron, David Davey and Gerald Kent, Plaintiffs-Appellants, Cross-Appellees,**

v.

**ICICLE SEAFOODS, INC., a Washington corporation, Defendant-Appellee, Cross-Appellant.**

Nos. 84–3647, 84–3669.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1984.

Decided Dec. 27, 1984.

Amended April 1, 1985.

Certiorari Granted in Part Oct. 15, 1985.
See 106 S.Ct. 270.

Carlson F. Eller, Tacoma, Wash., for plaintiffs-appellants, cross-appellees.

Graham & Dunn and Clemens H. Barnes and Eric Rosenquist, Seattle, Wash., for defendant-appellee, cross-appellant.

## AMENDED OPINION

Before WRIGHT, SNEED, and ALAR-CON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Maintenance employees aboard a non-self-propelled fish processing barge sued to recover unpaid overtime compensation under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219 (1982) (FLSA). The district court found the maintenance employees exempt from the overtime provisions of the FLSA. These employees appeal that determination.

Three issues are presented: (1) are maintenance employees aboard non-self-propelled fish processing barges "seamen" within the meaning of 29 U.S.C. § 213(b)(6), and therefore, exempt from the overtime compensation provisions of the FLSA; (2) are such employees exempt from overtime as "employees employed in first processing at sea in conjunction with fishing operations" under 29 U.S.C. § 213(a)(5); and (3) did the district court err in denying the defendant's motion seeking a "protective order" barring solicitation of additional plaintiffs?

## FACTS

Icicle Seafoods, Inc., (Icicle) is a Washington corporation which owns and operates a non-self-propelled seafood processing barge, the Arctic Star. The barge is towed from place to place in the waters of Alaska, British Columbia, or Washington, depending on the run of the catch delivered by a precommitted fishing fleet.

The Arctic Star is towed to new offshore locations from three to five times per year. Movement between locations takes from three to seven days. The barge is then generally anchored in one location for approximately seven weeks, but sometimes as long as seven months.

Typically, the Arctic Star is manned by a crew of approximately 160. Of that number, the large majority are processors, with three to eight maintenance employees. The processors receive overtime for all hours worked in excess of 40 hours per week. Their duties are to process raw fish or shellfish to a canned or frozen stage.

Appellants were maintenance engineers aboard the Arctic Star for periods between 1980 and 1982. Their duties included every repair, maintenance or fabrication necessary to the vessel's operation and safety while at anchor or under tow. In addition to their regular duties, appellants sometimes operated the anchor winches and tied and untied tender and fishing vessels alongside the barge.

By contract, they received monthly salaries without provision for overtime in exchange for their commitment to work 12 or more hours a day, seven days a week. The parties have stipulated that at issue here are over 8,000 hours of overtime pay.

The district court found that the appellants performed work of a maritime character on navigable waters. The court concluded that the appellants were "seamen" and exempt from the overtime provision of the FLSA under 29 U.S.C. § 213(b)(6).

The district court concluded also that the Arctic Star was engaged in first processing at sea in conjunction with fishing operations and, as a result, the appellants were exempt from both the FLSA's minimum pay and overtime provisions under 29 U.S.C. § 213(a)(5).

Consistent with its findings, the district court ruled that Icicle was not liable to the appellants for overtime compensation. The court also denied Icicle's motion for an order prohibiting the appellants from soliciting additional maintenance employees to join the suit.

## ANALYSIS

Exemptions from the FLSA are narrowly construed to ensure maximum coverage by the remedial legislation. Employers who claim that an exemption applies to their employees must show that the employees fit plainly and unmistakably within its terms. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945); *Brennan v. South Davis Community Hospital,* 538 F.2d 859, 865 (10th Cir.1976). Whether Icicle must pay overtime to maintenance employees aboard the Arctic Star, therefore, depends upon whether the FLSA clearly exempts such employees from the overtime requirements.

### I. "Seamen" Exemption

Seamen are exempt from the overtime requirements of the FLSA. 29 U.S.C. § 213(b)(6). Appellants contend that the district court erred in its finding that they were "seamen" under this provision.

The standard of review of exemptions under the FLSA is not clear. *Compare Walling v. General Industries Co.,* 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947) *with Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (interpreted in *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983), as support for a *de novo* standard) and *Levinson v. Spector Motor Service,* 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947) (applied in *Jones v. Giles,* 741 F.2d 245, 248 (9th Cir. 1984)). In *Walling,* the Supreme Court applied a Rule 52(a) clearly erroneous standard to a section 213(a)(1) exemption.

The lower courts have been inconsistent in applying *Walling,* even to questions arising under section 213(a)(1). *See, e.g., Paul v. Petroleum Equipment Tools Co.,* 708 F.2d 168, 170 (5th Cir.1983) (Without citing *Walling,* court noted uncertainty in the standard.); *Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 416 (5th Cir.1975) (Without citing *Walling,* court reapplied regulation and reversed district court.); *but see, Hoyt v. General Ins. Co.,* 249 F.2d 589, 590

(9th Cir.1957) (applying *Walling*) and *Wainscoat v. Reynolds Electrical & Engineering Co.,* 471 F.2d 1157, 1161–62 (9th Cir.1973) (ultimate question of fact).

In *Jones v. Giles,* 741 F.2d at 248, we applied a *de novo* standard of review to an exemption arising under section 213(b)(1), relying on *Levinson.* The *Levinson* Court expressly recognized the distinction between an exception which is measured by regulations promulgated by the Wage and Hour Administrator and an exemption whose scope is determined by interpretation of another act. *Levinson,* 330 U.S. at 676–77 & n. 19, 67 S.Ct. at 945 & n. 19.

We have held also that determination of employer under § 203(d) is a question of law but the clearly erroneous standard applies to review of the underlying facts. *Bonnette,* 704 F.2d at 1469. The regulations underlying § 203(d) are merely illustrative, not specific as are those underlying § 213(a)(1). *Compare* 29 C.F.R. § 791.2(a) & (b) *with* 29 C.F.R. § 541.1.

*Walling* does not necessarily control the outcome of the standard of review question in this case. First, *Walling,* dealt with review under § 213(a)(1). Second, the Court of Appeals in *Walling* had reversed the district court based on its reevaluation of conflicting testimony of witnesses. *Walling,* 330 U.S. at 550, 67 S.Ct. at 885. These facts are undisputed. *See Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1146–47 (3d Cir.1984) (review of a summary judgment).

The regulations interpreting § 213(b)(6) are illustrative and general, more closely paralleling those underlying § 203(d). *Compare* 29 C.F.R. § 783.31–37 *with* 29 C.F.R. § 791.2(a) & (b). For that reason, we apply a *de novo* standard of review to the application of the exemption to the facts and review the facts under a clearly erroneous standard. *See Donovan v. Weber,* 723 F.2d 1388, 1391–92 (8th Cir. 1984) (§ 203(r)); *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 969–70 n. 4 (5th Cir.1984) (§ 203(r)); *Gilreath v. Daniel Funeral Home, Inc.,* 421 F.2d 504, 508–10 (8th Cir.

1970) (establishment under § 213(a)(2)); *Homemakers Home & Health Care Services, Inc. v. Carden,* 538 F.2d 98, 107 (6th Cir.1976) (McCree, J., concurring) (retail concept under § 213(a)(2)). *See also United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (ultimate facts usually reviewed *de novo* ).

The FLSA does not define "seamen." The term has, however, been interpreted both in regulations and by the courts. Whether one is a "seaman" depends not on the job title or the location of the worksite, but on the character of the work performed. *Walling v. W.D. Haden Co.,* 153 F.2d 196, 199 (5th Cir.), *cert. denied,* 328 U.S. 866, 66 S.Ct. 1373, 90 L.Ed. 1636 (1946); 29 C.F.R. § 783.33.

The Wage and Hour Administrator has promulgated regulations which define a seaman as one who performs service primarily to aid in the operation of a vessel as a means of transportation. 29 C.F.R. § 783.33; *accord, Walling v. Sternberg Dredging Co.,* 64 F.Supp. 758, 761 (E.D. Mo.), *aff'd,* 158 F.2d 678 (8th Cir.1946). Reasoned interpretations of an act by the agency charged with administering it are entitled to deference. *Markair, Inc. v. C.A.B.,* 744 F.2d 1383, 1385 (9th Cir.1984). This circuit relied on the regulation's definition in *Donovan v. Nekton, Inc.,* 703 F.2d 1148 (9th Cir.1983). There we held that marine and electronic technicians whose primary duties aboard a research vessel did not aid the operation of the vessel as a means of transportation were not "seamen" exempt from the FLSA's overtime provisions. *Id.* at 1151.

One does not become a "seaman" under the FLSA merely by performing services aboard a vessel on navigable waters. For example, bargehands whose primary duties are loading and discharging cargo and who only rarely perform services which aid the vessel as a means of transportation are not seamen. *Knudsen v. Lee & Simmons, Inc.,* 163 F.2d 95, 96 (2d Cir.1947); *accord,* 29 C.F.R. § 783.36.

Similarly, employees whose duties on movable dredges are primarily industrial but who occasionally perform maritime duties are not seamen. *Sternberg Dredging Co. v. Walling,* 158 F.2d 678, 681 (8th Cir.1946). The critical factor is whether the employee's duties primarily aid navigation of the vessel.

The record indicates, and Icicle's counsel conceded at oral argument, that the Arctic Star remained anchored most of the time. During these periods, the appellants primarily monitored, maintained and repaired the processing machinery and electric power generators. Although some of their work may have been of a maritime character, the dominant employment was industrial maintenance. The maritime work was incidental and occasional, taking but a small portion of the work time.

We conclude that these employees, while working on a barge anchored in navigable waters, are principally employed not as exempt seamen but as industrial maintenance employees.

II.   At-Sea First Processing Exemption

The district court found that the appellants were also excluded from the minimum pay and overtime provisions of the FLSA as workers engaged in: (1) first processing of fish, (2) at sea, (3) in conjunction with fishing operations. 29 U.S.C. § 213(a)(5). Because we find that the last of these elements is not present, we need not address the appellant's argument as to the others.

Again the question arises which standard of review to apply to an exemption under the FLSA. Because the district court incorrectly interpreted the regulation, we can review the question in this instance as one of law. *See Helland v. Metropolitan Life Ins. Co.,* 488 F.2d 496, 497 (9th Cir.1973). *See also Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 1960 80 L.Ed.2d 502 (1984) ("Rule 52(a) does not inhibit an ap-

pellate court's power to correct errors of law...").

Under the regulations, processing performed "in conjunction with fishing operations" is interpreted to mean processing which takes place on the catcher vessel. 29 C.F.R. § 784.131. This regulation is consistent with the Senate Report:

> The purpose of [the § 213(a)(5) exemption] is to make certain that the Act will be uniformly applicable to *all employees on the fishing vessel* including those employees on the vessel who may be engaged in these activities at sea as an incident to the fishing operations *conducted by the vessel.*

S.Rep. No. 145, 87th Cong., 1st Sess. 33, *reprinted in* 1961 U.S.Code Cong. & Ad. News 1620, 1652–53 (emphasis added).

Icicle argues that the Senate Report is merely illustrative of one fact pattern to which the exemption applies, and does not impliedly preclude application of the exemption to processing done on nonfishing vessels. They argue that the regulation is unduly restrictive and should be rejected, relying on *Mitchell v. Trade Winds Co.,* 289 F.2d 278, 281 (5th Cir.1961).

Reading the regulation in light of the general policy that exemptions under the FLSA are narrowly construed, we conclude that the Senate Report was not intended to be merely illustrative. The administrative interpretation embodied in the regulation is correct.

### III. Protective Order Against Future Solicitation

■ In the event of a remand, Icicle seeks consideration of its cross-appeal. Icicle contends that the district court erred in denying its motion for a "protective order" prohibiting solicitation of other plaintiffs. Because we find insufficient evidence of solicitation on this record, we cannot say that the district court erred in refusing this injunctive-type relief.

Reversed and remanded for calculation of damages. If there be a subsequent appeal, it will return to this panel.