# ICICLE SEAFOODS, INC. *v.* WORTHINGTON ET AL.

No. 85–195.   Argued February 25, 1986—Decided April 21, 1986

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined.   STEVENS, J., filed a dissenting opinion, *post*, p. 715.

*Clemens H. Barnes* argued the cause for petitioner.   With him on the briefs were *James D. Rolfe* and *Erik Rosenquist.*

*Carson F. Eller* argued the cause and filed a brief for respondents.*

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondents sued their employer, petitioner Icicle Seafoods, Inc., to recover overtime benefits to which they thought they were entitled under the Fair Labor Standards Act (FLSA), 29 U. S. C. § 207(a)(1). After a 2-day trial, the United States District Court for the Western District of Washington held that respondents were excluded from the overtime benefits of the FLSA by 29 U. S. C. § 213(b)(6), which excludes "any employee employed as a seaman." Reviewing this issue under a *"de novo"* standard of review, the Court of Appeals for the Ninth Circuit reversed the judgment of the District Court, holding that respondents were not "seamen," but instead were industrial maintenance employees on a barge that processed fish caught by a fishing fleet in the coastal waters of the Pacific Northwest. 774 F. 2d 349 (1985). We granted certiorari to consider whether the Court of Appeals applied the appropriate standard of review in passing on the District Court's judgment. 474 U. S. 900 (1985).

The District Court made the following pertinent findings of fact related to whether respondents were "seamen" within the meaning of § 213(b)(6):

"2. Defendant Icicle Seafoods owned and operated a seafood processing vessel named the *ARCTIC STAR.* Each of the Plaintiffs worked for Defendant on board the *ARCTIC STAR* as members of the Engineering Department . . . . The *ARCTIC STAR* is a nonself-propelled barge which is moved from place to place with the aid of a tow boat, and is located throughout the waters of

---

*\*Eileen Madrid* filed a brief for Maryland Casualty Co. as *amicus curiae.*

Alaska or Washington, depending on the season and type of seafood being caught and processed.

. . . . .

"7. None of the Plaintiffs were members of the Processing Crew on board the *ARCTIC STAR*. The Processing Crew performed all the hands-on processing or packing of the fish or shellfish. Plaintiffs were members of the Engineering Department on board the *ARCTIC STAR*, considered themselves very distinct from the Processing Crew, and did not perform any hands-on processing or packing of fish or shellfish. As members of the Engineering Department, Plaintiffs were responsible for maintaining all systems for support and continuous operation of the vessel while at moorage or underway. Although working in shifts, the Plaintiffs had to be available on call 24 hours a day to perform work at a moment's notice if necessary to keep the vessel operating. Even though the plaintiffs were not licensed by the Coast Guard as engineers or members of an engineering department, each of the Plaintiffs performed tasks which conformed to those expected of Coast Guard licensed personnel. The very description of the Plaintiff's work is that of a marine engineer or member of an engineering department. In summary, each of the Plaintiffs were members of the crew of the *ARCTIC STAR* and performed work which was maritime in character and rendered while the *ARCTIC STAR* was in navigable waters. Each of the Plaintiff's employment was that of a seaman." App. A–3 to Pet. for Cert. 2–3, 5–6.

The Court of Appeals read the District Court's opinion as holding that respondents were "seamen" under § 213(b)(6) because the evidence showed that they "performed work of a maritime character on navigable waters." 774 F. 2d, at 351.

In reviewing this conclusion, the Court of Appeals initially pointed out that it and other Courts of Appeals have applied

conflicting standards of review to claims of exclusion from the FLSA, and attributed these different approaches to three cases decided by this Court within a few months of each other during its October 1946 Term. *Ibid.* The Court of Appeals recognized that in *Walling* v. *General Industries Co.*, 330 U. S. 545 (1947), this Court held that whether an employee falls within the exclusion for "executives" under 29 U. S. C. § 213(a)(1) is a factual question subject to the "clearly erroneous" standard of review set forth in Rule 52(a) of the Federal Rules of Civil Procedure. 774 F. 2d, at 352. But it thought that in *Levinson* v. *Spector Motor Service*, 330 U. S. 649 (1947), and *Rutherford Ford Corp.* v. *McComb*, 331 U. S. 722 (1947), this Court appeared to apply a *"de novo"* standard of review to whether an employee falls within an exclusion for employees covered by the Motor Carrier Act and to whether someone is an independent contractor rather than an employee. 774 F. 2d, at 352. The Court of Appeals reconciled its reading of these cases on grounds that the regulations implementing the provisions at issue in *Levinson* and *Rutherford* were "illustrative and general," whereas those in *Walling* were "specific," and that the trial court's findings in *Walling* were based on the conflicting testimony of witnesses. *Ibid.*

We think that neither *Levinson* nor *Rutherford* should be read to depart from the rule laid down in *Walling.* *Levinson* involved a case that was brought to this Court from the Supreme Court of Illinois, and that court had accepted the factual findings made by the Illinois Appellate Court. But state courts are not required to apply Rule 52(a)—a rule of *federal* civil procedure—to their own appellate system for reviewing factual determinations of trial courts. *Rutherford* came up through the federal court system, and this Court held that the District Court erroneously based its conclusion that particular employees were independent contractors on "isolated factors" in the employee's relationship with the employer. 331 U. S., at 729–730. We set forth a lengthy

summary of the facts without indicating the source for such a summary; but a fair reading of the opinion indicates that we were focusing on a legal question, and not on the allocation of factfinding responsibilities between district courts and courts of appeals. We therefore reaffirm our holding in *Walling* that the facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed by the courts of appeals pursuant to Rule 52(a), like the facts in other civil bench-tried litigation in federal courts.

The Court of Appeals in this case proposed to "apply a *de novo* standard of review to the application of the exemption to the facts and [to] review the facts under a clearly erroneous standard." 774 F. 2d, at 352, citing *United States* v. *McConney*, 728 F. 2d 1195, 1202 (CA9) (en banc), cert. denied, 469 U. S. 824 (1984). But nowhere in its opinion did the court ever mention any of the factual findings of the District Court, much less discuss or analyze them. The Court of Appeals seems to have believed that the District Court applied the wrong legal standard for what constitutes a "seaman" under § 213(b)(6). Whereas the District Court concluded that respondents were seamen because they performed work of a maritime character on navigable waters, see App. A–3 to Pet. for Cert. 6, the Court of Appeals held that under the pertinent regulations, the critical factor for determining whether an employee on a vessel is a seaman is whether his "duties primarily aid navigation of the vessel." 774 F. 2d, at 353; see also 29 CFR §§ 783.31, 783.33, 783.36 (1985). The Court of Appeals reviewed the record independently and found that the "dominant employment" of the respondents was "industrial maintenance," and that the "maritime work" that the respondents performed took but a small portion of their work time. 774 F. 2d, at 353. It therefore concluded that respondents were industrial maintenance employees and not seamen. *Ibid.*

We think that the Court of Appeals was mistaken to engage in such factfinding. The District Court found that "each of the [respondents] . . . performed work which was maritime in character and rendered while the *ARCTIC STAR* was in navigable waters." App. A–3 to Pet. for Cert. 6. But it made no finding that the "maritime work" was "incidental and occasional, taking but a small portion of the work time." 774 F. 2d, at 353. The question of how the respondents spent their working time on board the *Arctic Star* is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law which both parties concede is governed by the pertinent regulations promulgated by the Wage and Hour Administrator. See 29 CFR pt. 783 (1985). If the Court of Appeals believed that the District Court had failed to make findings of fact essential to a proper resolution of the legal question, it should have remanded to the District Court to make those findings. If it was of the view that the findings of the District Court were "clearly erroneous" within the meaning of Rule 52(a), it could have set them aside on that basis. If it believed that the District Court's factual findings were unassailable, but that the proper rule of law was misapplied to those findings, it could have reversed the District Court's judgment. But it should not simply have made factual findings on its own. As we stated in *Anderson* v. *Bessemer City*, 470 U. S. 564, 574–575 (1985):

> "The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources."

The judgment of the Court of Appeals is accordingly vacated, and the cause is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

The Court chastises the Court of Appeals for supplying a gap in the District Court's factual findings with uncontested facts rather than "remand[ing] to the District Court to make those findings." *Ante*, at 714. The criticism is unwarranted.

The issue in this case is whether respondents, who are maintenance employees on a nonself-propelled seafood processing barge, qualify as seamen under the Fair Labor Standards Act and are therefore not entitled to overtime benefits under that Act. See 29 U. S. C. § 207(a)(1). The only dispute below was with regard to the proper definition of "seaman"—an issue on which certiorari was denied and one on which the Court ventures no opinion. The District Court "found that the [respondents] performed work of a maritime character on navigable waters" and "concluded that the [respondents] were 'seamen' and exempt from the overtime provision of the FLSA under 29 U. S. C. § 213(b)(6)." 774 F. 2d 349, 351 (CA9 1985). The Court of Appeals reversed because "[o]ne does not become a 'seaman' under the FLSA merely by performing services aboard a vessel on navigable waters." *Id.*, at 353. Under a proper understanding of the statute, it held that respondents were not seamen:

"These facts are undisputed. . . .

. . . . .

"The record indicates, and Icicle's counsel conceded at oral argument, that the [processing barge] remained anchored most of the time. During these periods, the [respondents] primarily monitored, maintained and repaired the processing machinery and electric power generators. Although some of their work may have been of a maritime character, the dominant employment was

industrial maintenance. The maritime work was incidental and occasional, taking but a small portion of the work time.

"We conclude that these employees, while working on a barge anchored in navigable waters, are principally employed not as exempt seamen but as industrial maintenance employees." *Id.*, at 352–353.

The Court's only quarrel with the Court of Appeals is that it "made factual findings on its own" on the issue whether "the 'maritime work' was 'incidental and occasional, taking but a small portion of the work time.'" *Ante*, at 714. Apparently, the Court would have preferred to see the case "remanded to the District Court," *ibid.*, for the purely ministerial act of entry of formal findings on "these . . . undisputed" facts. The "rationale for deference to the original finder of fact," *Anderson* v. *Bessemer City*, 470 U. S. 564, 574 (1985), embodied in Rule 52(a) does not compel the entirely unrelated proposition that only district courts may make such findings. Appellate courts in general and this Court in particular have, after correcting an erroneous interpretation of law, applied the proper legal standard to undisputed facts of record—whether or not such facts have been memorialized in formal findings by "the original finder of fact." This practice not only promotes "the just, speedy, and inexpensive determination" of civil actions which Rule 52(a) is intended to secure, Fed. Rule Civ. Proc. 1, but it also allows appellate courts to give guidance to trial courts by illustrating the proper application of a new legal standard in a particular case.

I would affirm the judgment of the Court of Appeals.