**Stanley K. RUSSELL, Jr., Plaintiff,**

v.

**MINI MART, INC., Defendant.**

**No. CV 85–228–H–CCL.**

United States District Court,
D. Montana,
Helena Division.

Dec. 6, 1988.

F. Woodside Wright, Helena, Mont., for plaintiff.

Ronald F. Waterman, Helena, Mont., and John E. Thompson, Atlanta, Ga., for defendant.

MEMORANDUM AND ORDER

LOVELL, District Judge.

This is a constructive discharge case arising out of plaintiff Russell's resignation from employment with defendant Mini Mart effective January 16, 1985. The complaint also includes claims for overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and its Montana counterpart. The case was referred to U.S. Magistrate Robert M. Hol-

ter, who recommends summary judgment in defendant's favor on all counts.

*Facts* [1]

Russell began his employment with Mini Mart in July, 1982, as a store clerk in Billings. After expressing interest in management, Russell was transferred to Livingston in August, 1983, where he became a manager-trainee and subsequently manager of the Livingston Mini Mart store. In February, 1984, Russell became manager of the Cedar Street Mini Mart in Helena, where he remained until his resignation.

During his employment with Mini Mart, Russell received several pay increases and promotions. When he became manager of the Livingston store, his salary was fixed at $306.00 per week. By May 13, 1984, he was earning $353.00 per week, in addition to which he received a bonus of approximately $111.14 every four weeks.

Mini Mart policy contemplates a two-week management training period, during which time the trainee works under and closely with a store manager. When Russell became a manager-trainee, he was given only approximately two days of formal training before the Livingston store manager under whom he worked left. Thereafter, his training was from experience and with the assistance of his supervisor, Doug Lemm.

When Russell transferred to Helena, he no longer was under the supervision of Doug Lemm, but was supervised by Robert Ward. Friction between Russell and Ward developed almost immediately, and grew to the point that Russell tendered his resignation in July, 1984. At that time, Russell and Ward had a discussion about their relationship and Russell continued with his employment. The situation improved for approximately one month, after which their relationship again began to deteriorate. Russell believed that Ward exercised too much control over his store and his employees, effectively depriving him of his management responsibilities.

On January 2, 1985, Russell gave two weeks' written notice of his resignation. Although no grounds were stated in the letter, the Personnel Change Form completed by Ward on January 17, 1985, stated "other employment" as the reason for termination. Russell in fact was anticipating establishing a wholesale furniture business with his brother-in-law, which he discussed with Ward as the reason for his leaving Mini Mart. The furniture business never materialized, but Russell did not seek reemployment with Mini Mart.

Russell testified during his deposition that the prospective furniture business was only part of his reason for resigning, but that an additional factor was the difficulty he had working under Ward. He did not tell Ward of this at the time of his resignation, because he did not want to cause any "hard feelings." The essence of Russell's complaint is that he was not permitted to manage his store—that he constantly was under the close, and often unreasonable, scrutiny of Bob Ward.

This theme forms the underpinnings of both of Russell's theories of recovery. First, he asserts that since his function was not primarily managerial, he is not exempt from the overtime compensation requirements of the FLSA; and second, he claims that Ward's conduct constituted oppression and harassment sufficient for a finding of constructive discharge.

*Background*

The complaint alleges four counts: count one, violation of Montana's Minimum Wage and Overtime Compensation laws, Mont. Code Ann. §§ 39-3-401 *et seq.;* count two, violation of the Federal Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219; count three, breach of the implied covenant of good faith and fair dealing; and count four, wrongful discharge in violation of the public policy of the state of Montana.

Defendant seeks summary judgment on all counts, and the magistrate recommends that the motion be granted.

---

1. The facts are drawn from Russell's deposition and the other submissions of record. Where the facts are disputed, the court assumes the truth of the evidence set forth by the plaintiff.

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn.,* 809 F.2d 626, 631 (9th Cir. 1987).

The magistrate found that Russell was a managerial employee and therefore exempt from the overtime requirements of the FLSA, and that he was not constructively discharged.

Russell objects to a number of the magistrate's findings, and further objects to some of his conclusions as not supported by any finding of fact. Russell asserts that he has demonstrated a genuine issue of material fact sufficient to withstand summary judgment.

*Discussion*

Although the complaint seeks redress for alleged violations of both the federal Fair Labor Standards Act (FLSA) and the Montana minimum wage and overtime compensation laws, the parties apparently agree that since Mini Mart is an enterprise engaged in commerce, the FLSA exclusively applies to this action.

■ Under section 7 of the FLSA, 29 U.S.C. § 207(a)(1), an employer may not require an employee to work more than forty hours in a workweek unless the employee receives overtime compensation at a rate of one and one-half times the regular rate at which he is employed. Overtime compensation is not required for an employee employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). Mini Mart claims that Russell is exempt from the overtime compensation requirement by virtue of his "executive" status.

The exemptions contained in the FLSA must be construed narrowly against the employer "to ensure maximum coverage by the remedial legislation." *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir.1984), *rev'd on other grounds*, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). Mini Mart thus bears the burden of showing that Russell "fit[s] plainly and unmistakably" within the terms of the exemption claimed. *Id. See also, Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 183 (3rd Cir.), *cert. denied sub nom., Claridge Hotel and Casino v. McLaughlin*, — U.S. ——, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988).

The Secretary of Labor has promulgated regulations under 29 U.S.C. § 213(a) which define "bona fide executives" for the purpose of determining exempt status. Title 29, Code of Federal Regulations, Section 541.1 contains two tests for determining when an employee is an "executive." The "long test" contains six factors and applies to salaried employees who earn not less than $155.00 per week. The "short test" contains only two requirements and applies to salaried employees who earn not less than $250.00 per week. Since Russell at all times pertinent to this action was paid a salary in excess of $300.00 per week, it is undisputed that the short test applies.

Under the short test,

an employee who is compensated on a salary basis at a rate of not less than $250 per week ..., and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of two or more other employees therein, shall be deemed to [be an executive within the meaning of 29 U.S.C. § 213(a)(1)].

29 C.F.R. § 541.1(f). The issue whether an employee comes within one of the FLSA's exemptions is ordinarily a question of fact, *Wainscoat v. Reynolds Electrical & Eng. Co., Inc.*, 471 F.2d 1157, 1161–62 (9th Cir. 1973), but may be resolved on summary judgment where there are no material issues of fact. *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3rd Cir.1983).

Under 29 C.F.R. § 541.103, five factors must be considered in determining whether an employee's primary duty is managerial: 1) time spent in the performance of managerial duties; 2) relative importance of managerial and nonmanagerial duties; 3) the frequency with which the employee exercises discretionary powers; 4) the employee's relative freedom from supervision; and 5) the relationship between the employee's salary and the wages paid employees doing similar non-exempt work. *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir.1982).

The findings of the magistrate on these five factors are well supported in the record. Indeed, Russell objects to only three of the findings which bear upon this issue. He first objects to finding number 4, and claims that whether or not he characterized himself as the "boss" is not determinative of whether his primary duties were managerial. He next objects to finding number 10, which states that Russell "was in complete charge of the store organization and its storage." Russell asserts that such requirements were provided by Mini Mart programs and guidelines, from which he was not allowed to deviate. Finally, Russell objects to the magistrate's finding number 14 that his "clerk" (non-exempt) activities occupied less than fifty percent of his time. Russell claims that while he was working as a clerk, his managerial duties were secondary to that activity.

Taking Russell's contentions as true, his deposition testimony nonetheless compels a finding that he was an "executive" employee exempt from the FLSA. Even if Russell spent at least half of his time on non-exempt work, "[29 C.F.R.] § 541.103 states that 'time alone ... is not the sole test' and that an employee may 'nevertheless have management as his primary duty if the other pertinent factors support such a conclusion.'" *Donovan*, 675 F.2d at 521. Russell's deposition supports the finding that "the principal responsibilities of [a store manager], in the sense of being most important or critical to the success of the [store], are managerial." *Id.* Additionally, notwithstanding the amount of time devoted to clerical duties, most of the "oversight of the operation" was carried out simultaneously, and the plaintiff's managerial duties were his most important. *See also Wainscoat*, 471 F.2d at 1162; *Guthrie*, 722 F.2d at 1145; *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir.1982).

Additionally, Russell's claim that he did not have executive status because Mini Mart had detailed guidelines governing operation of his store is meritless. Russell does not contest the finding that he had supervisory and training responsibility over a number of employees, the scheduling of working hours and vacation times, and enforcement of company policy.

The supervision of other employees is clearly a management duty. *See* 29 C.F.R. § 541.102(b). The fact that [Mini Mart] has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring that company policies are carried out constitutes the "very essence of supervisory work."

*Donovan v. Burger King Corp.*, 672 F.2d at 226 (citation omitted).

Accordingly, giving no weight to the three specific findings to which objection is made, the other findings to this issue find ample support in the record and require the conclusion that Russell be held an exempt employee under 29 U.S.C. § 213(a).[2]

■ With respect to the issue of "constructive" discharge, Russell objects to the magistrate's conclusions that he did not attempt to rectify his lack of training and that the training issue is not material. Russell claims that the magistrate made no findings to support such conclusions, and that the magistrate failed to consider the affidavit of Sheryl Adams, which supports his theory of the case. He submits that material facts are at issue which require a jury determination whether Mini Mart breached the implied covenant of good faith and fair dealing.

Although the Supreme Court of Montana has not considered constructive discharge extensively, it has recognized that an action for breach of the covenant can lie where the employee's resignation is involuntary. *Gates v. Life of Montana Ins. Co.*, 205 Mont. 304, 668 P.2d 213 (1983). The Ninth Circuit has considered constructive discharge on a number of occasions, and adheres to an objective standard—

---

2. Russell's affidavit, filed nearly one year after his deposition was taken, contains several statements which appear to be contrary to his deposition. However, Russell may not create an issue of fact by an affidavit contradicting his prior deposition testimony. *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985). Therefore, to the extent that it contradicts his deposition testimony, Russell's affidavit will not be considered. *Id.*

"that a constructive discharge exists when 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Nolan v. Cleland,* 686 F.2d 806, 813 (9th Cir.1982) (quoting *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir. 1980)). The evidence must support a finding of "intolerable" working conditions, not based upon a single instance, but marked by "aggravating factors," such as a "continuous pattern of discriminatory treatment." *Satterwhite v. Smith,* 744 F.2d 1380, 1381–82 (9th Cir.1984).

The court agrees with the magistrate that the alleged lack of training does not create a genuine issue of material fact sufficient to withstand summary judgment. Plaintiff does not claim that he was unfit to manage his store, that he lacked the necessary skills or knowledge for such duties, or that the employees he supervised questioned his competence as a manager. In fact, the record reflects to the contrary. Russell had been involved in management since 1983, and even before that had learned a few things about Mini Mart policies and practices from his mother, who worked for Mini Mart in Billings. By January, 1985, he did not show a need for further training, and never complained to his employer about lack of training until the commencement of this litigation.

To withstand the motion for summary judgment on the constructive discharge issue, Russell must come forward with specific facts from which a rational trier of fact might resolve the issue in his favor. *T.W. Electr. Service,* 809 F.2d at 631. Viewing the evidence in a light most favorable to Russell, the court cannot conclude that a trier of fact could find that the working conditions were so intolerable that a reasonable person would have felt compelled to leave. Russell's deposition reflects tension between him and his supervisor, and disagreements over management style, but there simply is no evidence of a "continuous pattern of discriminatory treatment" or of a series of aggravating factors to support a finding of intolerable working conditions. The affidavit of She-

ryl Adams, although informative, does not create a triable issue of fact. The issue is whether the working conditions at the Cedar Street Mini Mart in Helena were such that a reasonable person would feel compelled to resign. Ms. Adams' affidavit is incompetent to address that issue.

Accordingly, except as modified herein, the magistrate's findings are approved, and

IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED. Its motion for summary ruling is DENIED.

Judgment shall enter accordingly.