**Phillip B. LENNOX, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 03–7034.

United States Court of Appeals, Federal Circuit.

Dec. 24, 2003.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant.

Doris S. Finnerman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy. Assistant General Counsel; and Jamie L. Mueller, Attorney, Department of Veterans Affairs, of Washington, DC.

Before CLEVENGER, GAJARSA and DYK, Circuit Judges.

DYK, Circuit Judge.

Appellant Phillip B. Lennox ("Lennox") appeals from the decision of the Court of Appeals for Veterans Claims affirming a decision by the Board of Veterans' Appeals ("BVA") that Mr. Lennox's disability was

not service connected. *Lennox v. Principi*, No. 00–2292, 2002 WL 31554551 (Vet. App. Oct.11, 2002). The appellant argues that the Court of Appeals for Veterans Claims should have reviewed the BVA decision *de novo* instead of applying a clearly erroneous standard. We disagree and find that the Court of Appeals for Veterans Claims applied the correct legal standard in reviewing the BVA's application of the correct legal standard to the facts of this case. Accordingly, we affirm.

## BACKGROUND

Mr. Lennox served in the United States Army from January 1954 to December 1956, and in the United States Air Force from July 1957 to September 1965. During that time he served in both Vietnam and Thailand. In September 1995, Mr. Lennox filed a claim with the Department of Veterans Affairs ("VA") for disability compensation based upon an alleged service connection for peripheral neuropathy related to dioxin (a component of the herbicide, Agent Orange) exposure and a claim for total disability based on individual unemployability ("TDIU"). A compensation and pension medical examination conducted by the VA in November 1995 found no specific cause for Mr. Lennox's ailment. On December 8, 1995, Mr. Lennox submitted the affidavit of another physician, Dr. Feinstein, who stated that it was "more probable than not" that Mr. Lennox's peripheral neuropathy was related to his exposure to dioxin while serving in Vietnam. Despite this affidavit, on April 12, 1996, the VA regional office in New York determined that Mr. Lennox was not entitled to a presumption of service-connectedness and issued a rating decision denying Mr. Lennox's claims for disability compensation based on alleged service connection and TDIU. Mr. Lennox filed a notice of disagreement with that

decision and in August 1996 filed an appeal to the BVA.

While the case was pending on appeal, the VA regional office issued a supplemental statement of the case ("SSOC") in February 1997. In that SSOC, the VA regional office explained that 37 C.F.R. § 3.309(e) established a presumptive service connection when a veteran exposed to dioxin developed "acute or subacute peripheral neuropathy." The SSOC further stated that "acute or subacute peripheral neuropathy" as it appears in the regulation is a transient condition with symptoms that appear within one year of exposure to an herbicide agent and disappear no later than two years after their onset. (App. at 84.) Because Mr. Lennox's condition had persisted long after the symptoms of acute or subacute peripheral neuropathy would have disappeared, the VA regional office explained that there was no presumption that his condition was related to prior exposure to dioxin.

On February 12, 1998, the BVA remanded the claim for further development and adjudication. The BVA explained that while the VA regional office had determined that Mr. Lennox had not established a presumptive service connection under the regulations, it had failed to consider Mr. Lennox's actual proof of direct causation, namely Dr. Feinstein's affidavit. After further development in January 1999 the regional office denied Mr. Lennox's claim for the second time, finding that the only evidence of a nexus between Mr. Lennox's alleged dioxin exposure and his peripheral neuropathy was Dr. Feinstein's "speculative" affidavit. (App. at 93.) Mr. Lennox appealed to the BVA, which again remanded. The BVA noted that in the treatment log for December 8, 1995, Dr. Feinstein explained that he signed the affidavit because it "seem[ed] reasonable that there very possibly may be a connection."

(App. at 98) Given the ambiguity of this statement, the BVA instructed the regional office to ask Dr. Feinstein to clarify his opinion. Upon remand, despite the regional office's requests, Dr. Feinstein refused to clarify his statements in the affidavit and treatment log. In July 2000 the regional office issued another SSOC continuing the denial of Mr. Lennox's claims.

On November 13, 2000, the BVA denied the appellant's claims for disability compensation based on alleged service connection for peripheral neuropathy and TDIU. Since it found no service connection for the peripheral neuropathy, Mr. Lennox's sole service-connected disability before the BVA was hemorrhoids (rated at 0% disability rating). The Board found that this disability does not prevent Mr. Lennox from securing and following substantially gainful employment.

Mr. Lennox appealed the decision of the BVA to the Court of Appeals for Veterans Claims. On October 11, 2002, the Court of Appeals for Veterans Claims affirmed the denial of Mr. Lennox's claim for service connection and TDIU by the BVA. *Lennox*, 2002 WL 31554551. The Court of Appeals for Veterans Claims stated that "[a] finding that a condition is or is not service connected is a finding of fact" and reviewed the BVA's denial of service connection under the clearly erroneous standard of 38 U.S.C. § 7261(a)(4).[1] *Id.* at *2. The Court of Appeals for Veterans Claims found a plausible basis in the record for the Board's conclusion of no service connection and denial of TDIU status. *Id.* Mr. Lennox timely filed this appeal. We have jurisdiction pursuant to 38 U.S.C. § 7292.

## DISCUSSION

The VA is charged in the first instance with adjudicating claims for service-connected disability under 38 U.S.C. §§ 1110 and 1131,[2] subject to review by the Court of Appeals for Veterans Claims, and ultimately by this Court under the more limited review provisions of 38 U.S.C. § 7292. The appellant's only argument on appeal is that the Court of Appeals for Veterans Claims committed legal error by applying the clearly erroneous standard of review to the BVA's finding of no service connection. Mr. Lennox contends that a finding of no service connection should always be reviewed *de novo*. The government argues that a determination of service connection is a finding of fact that is reviewed by the Court of Appeals for Veterans Claims under the clearly erroneous standard of 38 U.S.C. § 7261(a)(4). We conclude that neither position is entirely correct.

1. This statute provides that the Court of Appeals for Veterans Claims shall "in the case of a finding of material fact made in reaching a decision in a case before the Department [of Veterans Affairs] with respect to benefits, ... set aside such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4) (2000) (subsequently amended by Veterans Benefits Act of 2002, Pub.L. No. 107–330, § 401(a), 2002 U.S.C.C.A.N. (116 Stat. 2820)).

2. Title 38 of the United States Code sections 1110 and 1131 grant veterans disability compensation for service-connected injuries occurring in wartime and peacetime respectively. The text of 38 U.S.C. § 1110 provides:

For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

■ The statutes and regulations provide for disability compensation for service-connected injuries under sections 1110 and 1131 and establish a number of presumptions of service connection for diseases associated with exposure to certain herbicide agents. *See* 38 U.S.C. § 1116 (2000); 38 C.F.R. §§ 3.307 and 3.309 (2002). The BVA's explicit interpretation of these statutes and regulations concerning the correct standard for service connection is a legal ruling to be reviewed without deference by the Court of Appeals for Veterans Claims. So too if the BVA holds that, as a matter of law, service connection is or is not established by particular facts so that "the relevant legal principle [is] ... given meaning through its application to the particular circumstances of a case," the clearly erroneous standard does not apply. *See Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). However, the BVA's determination of disputed facts or the application of established law to the facts of a particular case without creating precedent are issues of material fact subject to review by the Court of Appeals for Veterans Claims under the clearly erroneous standard of § 7261(a)(4).[3]

In this respect, a finding of service connection or lack thereof is similar to a finding of negligence—a finding that is treated as factual in nature when it involves applying established law to the facts at issue without creating legal precedent. *See Armstrong v. United States,* 756 F.2d 1407, 1409 (9th Cir.1985) ("[T]he determination of negligence requires the testing of particular facts against a predetermined standard of conduct. The existence and extent of a duty of care are questions of law but whether such a duty has been breached [is a question of fact].") (internal citations omitted); *Bryant v. Hall,* 238 F.2d 783, 787 (5th Cir.1956) ("Where ... not only the facts constituting the conduct of the parties, but also the standard of care which they should have exercised, are to be determined, the case is entirely one of fact....."); Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Cliches Eroding Our Day in Court and Jury Trial Commitments?,* 78 N.Y.U. L.Rev. 982, 1084 (2003) ("Negligence is the paradigmatic mixed question of law and fact .... in this context [i.e.— where the legal standard is certain], the [fact-finder] is not simply determining 'what happened'—the historical facts—it is also determining the legal effect of its findings as to 'what happened.' "); *see also, e.g. Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986) (holding that the clearly erroneous standard of review applies to the district court's determination of whether respondents met the statutory standard for "seamen"); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (holding that the clearly erroneous standard of review applies to the district court's determination of whether the applicable facts constituted "intentional discrimination" in a Title VII case); *Campbell v. Merit Sys. Prot. Bd.,* 27 F.3d 1560, 1567 (Fed.Cir.1994) (holding that the Board's determination of whether the petitioner was an "independent candidate" under the regulations should be reviewed for substantial evidence).

**3.** Nothing in our decision in *Hensley v. West,* 212 F.3d 1255 (Fed.Cir.2000), is to the contrary. That case dealt with the question of whether a claim for compensation was "well grounded," *id.* at 1263, an issue that is similar to the testing of a pleading for accuracy under Federal Rule of Civil Procedure 12(b)(6). Such determinations are reviewed under a de novo standard. *Id.* The facts underlying such determinations are reviewed under the clearly erroneous standard. *Id.*

■ In the present case, there is no claim that the BVA was interpreting the statute. Nor was the Board establishing a legal rule to be applied to similar fact situations in future cases. Rather, the Board was simply applying the established law to the facts at issue. The BVA concluded that the evidence of direct causation, including Lennoxs unsupported allegations of exposure to dioxin and the speculative affidavit of Dr. Feinstein, was insufficient to establish service connection in light of the overall record. The Court of Appeals for Veterans Claims found that the medical evidence in the record provided a plausible basis for the denial of service connection and that the decision of the BVA was not clearly erroneous. *Lennox*, 2002 WL 31554551, at *2. This was a proper application of the clearly erroneous standard of review. There was no legal error, and apart from constitutional issues we, of course, have no jurisdiction to determine whether in a particular case the application of the established law to the facts at issue passed muster under the clearly erroneous standard. *See* 38 U.S.C. § 7292(d)(2) (2000); *Epps v. Gober*, 126 F.3d 1464, 1466 (Fed.Cir.1997) ("Our jurisdiction does not extend to challenges either to factual determinations or to the law as applied to the facts of a particular case.").

## CONCLUSION

In view of the above, we find that the Court of Appeals for Veterans Claims correctly reviewed the BVA's application of the law to the facts at issue under the clearly erroneous standard of review. The decision of the Court of Appeals for Veterans Claims is

AFFIRMED.

## COSTS

No costs.