**Neda LANGLEY, on her own behalf and all others similarly situated, Plaintiff,**

v.

**GYMBOREE OPERATIONS, INC., a California Corporation, Defendant.**

No. 07–80549–CIV.

United States District Court, S.D. Florida.

Jan. 8, 2008.

Jason S. Haselkorn, Casey Ciklin Lubitz Martens & O'Connell, West Palm Beach, FL, for Plaintiff.

Jeffrey Mandel, Fisher & Phillips LLP, Orlando, FL, Jessica R. Perry, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA, for Defendant.

## *ORDER*

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Defendant Gymboree Operations, Inc.'s Motion for Summary Judgment (DE 59). The Court has reviewed the record and is otherwise advised in the premises.

### Background

This action arises out of a claim for unpaid overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and for a statutory collective action pursuant to 29 U.S.C. § 216(b). Defendant Gymboree Operations, Inc. ("Gymboree") now moves for summary judgment on all counts.

### Facts

Defendant Gymboree Operations, Inc. ("Gymboree") is a San Francisco, California-based retail company engaged in the business of selling children's apparel. Plaintiff Neda "Lilly" Langley ("Langley") was employed by Gymboree from November 11, 2003 until her voluntary resignation from the company on June 30, 2007. At all times during her employment with Gymboree, Langley was employed as a Store Manager.

During the two years preceding the filing of the instant lawsuit, Langley was the Store Manager for Gymboree's Gardens Mall Store ("the Gardens") in Palm Beach Gardens, Florida. The Gardens is physically separate from any of Gymboree's corporate offices. Langley was the most senior employee assigned to the Gardens store. Assistant Managers and Sales Associates employed by Gymboree also were assigned to the Gardens store. Langley also helped out at the City Place Gymboree store one to two times per week for about eight months. (Dep. p. 88.)

As the Store Manager, Langley was the only person Gymboree classified as a salaried, overtime exempt employee in the store. She was always paid in excess of $455 each week and always received her full salary regardless of the number of hours worked. The Assistant Managers and Associates assigned to the Gardens store were all hourly, non-exempt overtime-eligible employees. The highest-paid, full-time assistant manager at the Gardens store made $15 an hour, while the highest paid sales associate made $10 an hour, with most making $7 an hour.

As the Gardens Store Manager, Langley reported to a District Manager ("DM"), who was usually located in Fort Pierce, Florida. The DM was responsible for ten stores in the District. Rosanne Hernandez was the DM when Langley became the Store Manager of the Gardens Mall store. Carol Slawnikowski became Langley's DM in May 2006, and served in that capacity until May 2007, when Cecilia (Carmen) Diaz became the acting DM for the District. The DMs for Langley's District reported to Regional Manager ("RM") Kathy Zorich, who was located in Boca Raton, Florida. Ms. Zorich was responsible for up to nine DMs sixty-eight stores.

Langley saw the DM approximately once every six to eight weeks. There were weeks in which Langley would not speak to her DM other than in a Monday morning weekly conference call with the DM and all of the Store Managers in the District. Langley's RM visited the Gardens store two times per year.

As Store Manger during the relevant time period, Langley performed job duties that included: interviewing, selecting and training employees; setting and adjusting rates of pay and hours or work; directing the work of employees; appraising employee productivity and efficiency; disciplining employees; providing for the safety of the employees or the property; selling, servicing customers, and merchandising.

## Summary Judgment Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County,* 139 F.3d 865, 871 (11th Cir.1998); *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion. *See Earley,* 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## Legal Analysis

At issue is whether Plaintiff is exempt as an executive from the overtime compensation provisions of the FLSA. Generally, the FLSA requires that employees receive one and one-half times their regular rate of pay for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). However, "any employee employed in a bona fide executive ... capacity" who receives payment on a salary basis is exempt from this requirement. 29 U.S.C. § 213(a)(1). Pursuant to the applicable Department of Labor regulations, to be "employed in a bona fide executive capacity" an employee must:

(1) be compensated on a salary basis at a rate of not less than $455 per week;

(2) have the primary duty of management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) customarily and regularly direct the work of two or more employees; and

(4) have the authority to hire or fire other employees or have the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees given particular weight.

29 C.F.R. § 541.100(a)(*l*)-(4). Here, the parties agree that, as Store Manager, Plaintiff: 1) was compensated on a salary basis at a rate of not less than $455 per week; 2) customarily and regularly directed the work of two or more employees; and 3) had the authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion, or other change of status of other employees was given particular weight. (Joint Pretrial Stip. p. 6.)

Therefore, the only remaining prong of the applicable regulation at issue is whether Plaintiff had the primary duty of management of the enterprise in which she was employed or of a customarily recognized department or subdivision thereof.

■ The Secretary of Labor has issued a regulation elucidating the type of work that constitutes "management."

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and moni-toring or implementing legal compliance measures.

29 C.F.R. § 541.102. An employee's "primary duty" is determined based on all of the facts in a particular case, with emphasis placed upon the character of the employee's job as a whole. § 541.102(a). The regulations provide a list of factors and issues to consider in determining whether an employee's "primary duty" is management:

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment

of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.

29 C.F.R. § 541.700(a)-(c). The regulations also state that:

> Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives shall make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

29 C.F.R. § 541.106(a). How an employee spends her time working is a question of fact, while the question of whether the employee's particular activities exclude her from the overtime benefits of the FLSA is a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).

Plaintiff argues that her primary duty was not management but was, instead, making sales to customers like the nonexempt Assistant Store Managers and Sales Associates she supervised. She ar-

gues that she was transferred from the Wellington store to the Gardens store because of her sales, not her managerial duties. She also helped out at the City Place Gymboree store one to two times per week for about eight months. She states that, while there, she was not there to run it; there was no one on the sales floor. In her deposition, she states that her activities at the City Place store included making sure the store was running, making sure the merchandise was put out properly, and generally overseeing it a little bit. (Dep. p. 88.) She states that, half the time, she was on the floor by herself with no breaks and no bathroom (Dep. p. 114.) and that all of the District Managers told her that her primary duty with Gymboree was to sell.[1] (Dep. p. 231–35.) She argues that, despite the fact she was responsible for sales leadership when she had sales assistants on the selling floor, the instances when such scenarios occurred were minimal. (Dep. p. 118.)

Plaintiff argues that she was forced to work sixty or more hours per week after 2003, that she had very little additional responsibility for the store than assistant managers and that her district manager handled her managerial duties. (Dep. p. 19, 25.) She states that she had very little control over the store, in that the District Manager did the audits, controlled the inventories, controlled the task hours, controlled the payroll, and how to make the store more profitable. (Dep. p. 55–56.) She states she had no control over the monitoring and management of expenses and did not set the starting salaries for new hires. (Dep. p. 118, 133–34.)

It is clear from the record that Plaintiff, as Store Manager, interviewed, selected, and trained employees. She set and ad-

---

**1.** Defendant provides affidavits from District Managers disputing this. However, this factual dispute is irrelevant to the Court's analysis and ultimate disposition.

justed rates of pay and hours or work. She regularly directed the work of two or more employees. She appraised employee productivity and efficiency. She disciplined employees. She provided for the safety of the employees or the property. She also engaged in selling, servicing customers, and merchandising. (Joint Pretrial Stip. p. 3–4.) She was responsible for sales leadership when she had sales assistants on the selling floor. (Dep. p. 118.) She was responsible for the financial results of the store. (Dep. p. 118.) She explained monthly goals to the associates. (Dep. p. 201.) She ensured the store met safety standards, including that the fire doors were not blocked. (Dep. p. 305–06.)

■ While Plaintiff states that she spent over half the time on the floor by herself with "no breaks and no bathroom" and that she was on the sales floor from nine in the morning to whenever she left, the amount of time spent performing exempt work is not dispositive. 29 C.F.R. § 541.700(b). This is because it is possible for such store managers to perform managerial tasks simultaneously with non-exempt tasks. In this case, for example, Plaintiff does not dispute that when she had sales assistants on the floor with her, she was responsible for sales leadership. (Dep. p. 118.) Sales leadership is unquestionably a managerial task. Additionally, the regulations include a provision on concurrent duties, which accounts for the common occurrence of having store managers who also perform some non-exempt work. 29 C.F.R. § 541.106(a). Therefore, the Court must examine other factors in order to determine whether Plaintiff's primary duty was management.

Another factor to consider is the relative importance of the managerial tasks to non-managerial work. Plaintiff's managerial functions were critical to the success of the store. Gymboree could not have operated successfully unless she was interviewing, selecting, and training employees, disciplining employees, and setting and adjusting rates of pay and hours of work of those employees. The Gymboree New Store Manager Training Program Guide states that the Store Manager is "the key to [Gymboree's] ongoing success as a retail organization" and that the Store Manager "supports the day-to-day operations at the store level." (Diaz Aff. Ex. A.) Many of the duties Plaintiff performed are listed in Gymboree's Store Manager position description (Diaz Aff. Ex. B.) Further, the Corrective Action Forms produced by Gymboree with regard to Plaintiff Langley reveal the importance it placed on her managerial tasks. These forms include statements that Plaintiff "must promote a positive work place", "must manage employee relation issues in a timely manner in partnership with DM", and list as goals of store operations that Plaintiff Langley would conduct a management meeting by a certain date, ensure the "entire team is aware of financial/CSE results", "train/role play daily on selling outfits w/accessories", "replenish merchandise daily to maintain visual", and "ensure compliance in stock room neat/organized at all times." (Diaz Aff. Ex. C.)

A third factor to consider is the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee. Plaintiff was always paid in excess of $455 each week and always received her full salary regardless of the number of hours worked. She was the only person classified as a salaried, overtime exempt employee in the store. She was paid an annual salary ranging from $40,000 in May 2005 to $45,100 when her employment terminated. (Dep. p. 100.) Additionally, Plaintiff Langley, as store manager, was eligible for a larger bonus

for store performance than any of the other employees. (Dep.Ex.5.) The assistant managers and associates assigned to the Gardens store were all hourly, non-exempt overtime-eligible employees. (Joint Pretrial Stip.) The highest paid, full-time assistant manager at the Gardens store made $15 an hour, while the highest paid sales associate made $10 an hour, with most making $7 an hour. (Dep. p. 101.) Thus, this factor weighs in favor of finding Plaintiff Langley's primary duty was management.

A fourth factor to consider is whether Plaintiff exercised discretion with relative freedom from supervision. Her direct manager was the District Manager, who was physically removed from the stores at which Plaintiff worked. Additionally, Plaintiff states that there was a six-to-eight month gap between the time Carol Slawnikowski became Plaintiff's DM and when Carmen Diaz became Plaintiff's DM. As DM, Carmen Diaz is responsible for eighteen different stores throughout South Florida and does not regularly visit the stores. (Diaz Aff. ¶ 2.) The DMs reported to Regional Manager Kathy Zorich, who was located in Boca Raton, Florida, and was responsible for up to nine DMs and sixty-eight stores. (Zorich Aff. ¶ 3.) There were weeks in which Plaintiff would not speak to her DM other than in a Monday morning weekly conference call with the DM and all of the Store Managers in the District. The RM visited the Gardens store only two times per year. Thus, Plaintiff was in charge of the day-to-day operations of the store. As such, she experienced sufficient freedom from supervision to satisfy this factor.

Further, even if the DMs circumscribed Plaintiff's discretion to a large degree by issuing instructions to Plaintiff, including instructions from a corporate manual, that would not negate the fact that Plaintiff was charged with the task of ensuring daily compliance with corporate policy or with instructions from the DMs. *See Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982) (stating that the person "in charge" of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions); *see also Moore v. Tractor Supply Co.*, 352 F.Supp.2d 1268 (S.D.Fla.2004), *aff'd*, 140 Fed.Appx. 168 (11th Cir.2005).

Essentially, Plaintiff argues that, despite her title of store manager, management was not her primary duty because she performed non-exempt duties a large portion of the time, her discretion was limited by corporate policies[2], and that the DM and not Plaintiff actually managed the store. Courts have routinely granted summary judgment in favor of the employer in these situations. *See Posely v. Eckerd Corp.*, 433 F.Supp.2d 1287, 1302 (S.D.Fla. 2006) (collecting cases).

## Conclusion

The Court finds that, as a matter of law, an examination of the tasks Plaintiff performed reveals that her primary duty was management. Plaintiff is exempt from FLSA overtime provisions by virtue of the executive exemption, and Defendant is entitled to summary judgment on this basis.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Gymboree Operations, Inc.'s Motion for Summary Judgment (DE 59) is GRANTED. Final judgment shall be entered by separate order.

---

**2.** For example, Plaintiff argues that her evaluations of the employees assigned to her store took "about 15–20 minutes per employee—on a form." (Dep. p. 183.)