No. 95-3174
_____

Robert B. Reich, Secretary          *
of Labor,  United States            *
Department of Labor,                 *
                                     *
          Appellant,                 *     Appeal from the United States
                                     *     District Court for the
     v.                              *     Southern District of Iowa.
                                     *
Avoca Motel Corporation, doing       *
business as Avoca Heights Motel;*
Denison Park Corporation, doing      *
business as The Denison Park         *
Motel; Walnut Colonial, doing        *
business as Walnut Budget Motel;*
Tom Anderson,                        *
                                     *
          Appellees.                 *

                         _____

               Submitted:  March 14, 1996

                 Filed:  April 26, 1996
                         _____

Before MAGILL, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.

                         _____

MAGILL, Circuit Judge.

     The Secretary of Labor appeals the district court's[1] conclusion that
the various defendant motels did not violate the overtime and minimum wage
provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206, 207
(1994).  The court determined

_____

[1]The Honorable Harold D. Vietor, United States District Judge
for the Southern District of Iowa.

that the motel managers' "waiting time"[2] counted as exempt work, and thus the motel managers qualified for the administrative exemption.  We affirm.

## I.

All four motels at issue in this case, located in southwest Iowa, are owned by Thomas Anderson.  Although Anderson stops by each motel about once per week, he does not personally attend to the on-site management responsibilities of any of the motels.  Rather, the day-to-day management rested with the motel manager.  These managers conferred by phone with Anderson two or three times per week reporting employee hours and other information.  During these conversations, the managers would often make suggestions and recommendations to Anderson concerning the method of operation of the motels.

The district court found that the primary duties of the managers was management of the motel.  The duties include such personnel tasks as interviewing and hiring applicants for employment as housekeepers or desk clerks, training and evaluating such employees, and, if needed, recommending to Anderson their termination.  The managers would also schedule the housekeepers and desk clerks, make assignment sheets for the housekeepers and maintenance workers, and oversee the work of the employees.

The managers also served as the motels' liaisons to the guests.  It was the managers' responsibility to receive and solve guest concerns.  The managers also inspected guest rooms and the lobby areas, making decisions as to the proper presentation and appearance of those areas.  These decisions were based on numerous

---

[2]Waiting time is that period of time beyond the scheduled working hours during which the managers, although engaged in personal pursuits, were on the motel premises and were on call to tend to motel business as circumstances required.

factors, such as the occupancy rate of the motel, the time of day, the time of year, and the like.

Because these motels are small, rural motels that relied heavily on word-of-mouth advertising, the managers also engaged in "public relations" work with customers in order to gain their repeat business. As part of this, the managers were authorized to grant room rate discounts within limitations imposed by Anderson.

The managers also performed duties not directly related to management duties. These included doing laundry, snow shovelling, lawn mowing, cleaning the lobby area, taking reservations, and checking in guests. The time spent doing laundry, taking reservations, and checking in guests was proportional to the volume of business--more when business was good and less when it was slow.

One of the managers' conditions of employment was that they live on the premises, so that they could respond promptly to guest needs. The managers generally spent much of the time beyond the standard working hours in their lodgings engaged in personal life activities. There were interruptions during this waiting time--business phone calls, guests checking in, guests seeking assistance, guest complaints, and the like. These interruptions sometimes came during the managers' meal hours and occasionally late at night.

The managers were required to keep the motels open from 7:00 or 7:30 a.m. until 10:30 or 11:00 p.m. Because the managers were required to stay on the premises during open hours, the motel managers worked approximately 16 hours per day, or 112 hours per week. For this they were paid a salary of not less than $155 (but not more than $250) per week, exclusive of lodging.

The Secretary brought this action, claiming that the motels violated the FLSA by not paying minimum wage and not paying

overtime salary to the managers.  The district court disagreed, concluding that, under § 13(a)(1) of the FLSA, the managers were "employed in a bona fide administrative capacity" and thus were exempt employees under the FLSA.  See 29 U.S.C. § 13(a)(1).[3]

Central to the district court's decision was its determination that the waiting time assumed the character of management duties.  The district court reasoned that the managers were required to live on the premises due to their management duties.  The court found that the waiting time plus the time spent actively performing management duties totalled in excess of sixty percent of their hours worked, meeting the requirement for exemption found in 29 C.F.R. § 541.2(d) (1994); see infra note 3.

## II.

Whether a particular duty is administrative presents a legal question that we review de novo.  See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986); Shockley v. City of Newport News, 997 F.2d 18, 26 (4th Cir. 1993).  In contrast, "the amount of time devoted to [administrative] duties, and the significance of those duties, present factual questions that we review for clear error."  Id.; Icicle Seafoods, 475 U.S. at 713.

To qualify for the administrative exemption found in 29 U.S.C. § 13(a)(1), the managers must meet all of the requirements of 29

_____

[3]At the close of evidence, the Secretary made a motion for judgment which conforms to the evidence.  The Secretary argued that because the issues were tried with consent of the parties, they should be allowed to amend their pleadings to include certain previously unnamed managers pursuant to Federal Rule of Civil Procedure 15(b).  The district court denied this motion, concluding that the issues were not tried with consent of the parties.  We affirm this denial, noting that the motion is moot because no back pay was awarded in this case.

-4-

C.F.R. § 541.2 (1994).[4]  The district court held, without elaboration, that the managers clearly met the requirements of § 541.2(a)-(c), (e).  We agree with this conclusion.[5]

Whether the managers also met the requirement of § 541.2(d), that they spend at least sixty percent of their time engaged in work directly related to management policies or general business operations, is a closer

_____

[4]Pursuant to 29 C.F.R. § 541.2, an employee employed in a bona fide administrative capacity within the meaning of § 13(a)(1) of the FLSA means any employee

(a) Whose primary duty consists of . . .
  (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer . . . ; [and]
. . . .
  (b) Who customarily and regularly exercises discretion and independent judgment; and
  (c)(1) Who regularly and directly assists a proprietor . . . ; [and]
. . . .
  (d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
  (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week . . . exclusive of board, lodging, or other facilities . . . .

[5]The Secretary argues that the duties at issue are more properly covered by the executive exemption, see 29 C.F.R. § 541.1, rather than the administrative exemption.  We disagree.  The managers performed such tasks as resolving guest complaints, engaging in "public relations" work to gain repeat customers, and making decisions as to the proper presentation of the rooms and common areas.  Further, the managers often conferred with Anderson and made suggestions and recommendations to Anderson concerning the method of operation of the motels.  We find that these duties fall under the rubric of "advising the management" and "promoting sales," which are specifically included in the definition of administrative duties.  See 29 C.F.R. § 541.205.

issue.  Because the managers spent a

significant amount of time during the day performing nonexempt work such as laundry and checking in guests, the managers will exceed the sixty percent threshold only if the waiting time is classified as exempt.  The district court concluded that the waiting time was exempt, and we agree.

In determining whether waiting time should be classified as exempt, the court must undertake a qualitative analysis:  why were the managers on call?  If the managers were on call because their presence was required to handle management-type concerns, then the waiting time is exempt time.  The managers' performance of some nonexempt work during this period will not otherwise convert the waiting time into nonexempt time, because in such a situation, the nonexempt work--in this case, laundry and checking in guests--is merely ancillary and incidental to the performing of exempt work.  See Smith v. City of Jackson, Miss., 954 F.2d 296, 299 (5th Cir. 1992); Murray v. Stuckey's, Inc., 939 F.2d 614, 618 (8th Cir. 1991), cert. denied, 502 U.S. 1073 (1992), aff'd upon remand, 50 F.3d 564 (8th Cir. 1995).

In the present case, the managers on call performed a variety of both exempt and nonexempt tasks.[6]  Nevertheless, the district court determined, as a factual matter, that the managers were on call to handle management-type concerns.  As the court noted,

> [T]he managers were required to live on the premises because of their management duties, and not because they did the laundry and checked in guests and did other non-management duties during the motels' open hours.  They were not glorified desk clerks; they were managers.  It was primarily to be available to respond to management demands that the managers were on the premises in a

_____

[6]Some of the interruptions called on the managers to perform management-type duties, such as responding to concerns or complaints of a guest, while other interruptions called upon them to perform a nonmanagement task, such as take a reservation or check in a guest.

waiting status, and I therefore find and conclude that their waiting time assumes the character of management duties.

Order at 7. We do not find this conclusion clearly erroneous. See Icicle Seafoods, 475 U.S. at 713 (standard of review). Thus, the waiting time assumes the character of exempt work, see City of Jackson, 954 F.2d at 299, and the managers have met the requirement of § 541.2(d) that they spend at least sixty percent of their time performing exempt tasks.

## III.

The managers in this case meet all of the requirements for the administrative exemption found in § 541.2, and, therefore, the motels did not violate the minimum wage and overtime provisions of the FLSA. The district court's opinion is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.