# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1418

———————————————

Veronica R. Grage

*Plaintiff - Appellee*

v.

Northern States Power Co. - Minnesota

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 21, 2015
Filed: December 28, 2015

——————————

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.

——————————

BEAM, Circuit Judge.

Veronica Grage sued her employer, Northern States Power Company-Minnesota (NSP), for failing to pay overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219. The district court granted partial summary judgment in favor of Grage, holding that because Grage's work was not directly related to NSP's management or general business operations, she did not fall within the administrative exemption of the FLSA. As a result, the district court

determined Grage was entitled to overtime pay. NSP appeals the district court's denial of its motion for summary judgement and grant of partial summary judgment in favor of Grage. For the reasons discussed below, we reverse in part and remand for further proceedings.

## I.    BACKGROUND

NSP provides gas and electricity to customers throughout Minnesota. Grage worked for NSP for over thirty years and was eventually promoted to Supervisor I. As a Supervisor I she worked at NSP's Chestnut Service Center. She was a salaried employee classified by NSP as exempt from overtime pay under the administrative exemption of the FLSA. She retired at the end of 2013 and sued NSP for failing to pay her overtime in her capacity as a Supervisor I in violation of the FLSA.

NSP and Grage describe her Supervisor I duties and responsibilities quite differently. NSP's description, which Grage agreed generally reflected her primary job duties, includes development and management of daily work plans, assigning and directing Field Operations employees, providing work direction to construction resources, assigning equipment, overseeing work detail, coordinating all components involved with requested outages, and independently assigning resources to work. One of the "competencies" listed as part of the job description for Supervisor I is "Project/Program Management," which includes planning, directing, managing, and monitoring programs, schedules, and resources. Specifically, she regularly engaged in daily and long-term planning in regards to work plans and reprioritization of jobs. NSP notes that crews took direction and guidance from Grage, she authorized overtime when necessary, and she investigated and responded to customer complaints.

Conversely, Grage claims that her primary duty was to schedule and dispatch NSP's work crews to do installations, maintenance, and repairs. She claims she did not have to manage the business or use discretion because NSP employees, called

"Designers," performed consultations and designed plans to meet customer needs. After work orders from the Designers were submitted to Grage, she simply scheduled crews to perform the orders. She also alleges that although she was in charge of scheduling and assigning crews to deal with emergencies and routine maintenance, she had minimal customer service responsibility, did not oversee contract crews, and did not manage operations or the budget. Grage points out that NSP lists the title of Supervisor I under the "Production Operations" job family, not the "Administrative Services" job family. Jobs within Production Operations are "directly involved in the production distribution or maintenance of system[s] that produce or distribute energy." Also, the Supervisor I's official "Job Function" is "Field Operations" rather than "Field Support." Field Operations includes duties such as "development, and implementation management of processes and systems directing the overall gas and electric construction, operations, maintenance and emergency repair activities." Field support, she claims, is the category that includes performance of administrative or support functions.

In October 2013, NSP moved for summary judgment requesting dismissal of the case, arguing there was no genuine dispute of material fact that Grage is exempt from overtime under the FLSA as an administrative employee. Grage also moved for summary judgment, arguing that there was no genuine dispute of material fact that one of the three requirements for the administrative exemption was not met and requested liquidated damages. In September 2014, the district court found that Grage was not exempt from overtime pay under the administrative exemption of the FLSA because her primary duty did not directly relate to the management or general business operations of NSP. Accordingly, the court denied NSP's motion for summary judgment and granted Grage's request for summary judgment on liability. But the court denied Grage's request for summary judgment on the issue of liquidated damages. NSP now appeals the district court's grant of partial summary judgment in favor of Grage and denial of its motion for summary judgment.

## II.    DISCUSSION

We review a district court's decision to grant or deny summary judgment de novo.  Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011).  Summary judgment is only proper "where the evidence, viewed in the light most favorable to the nonmovant, shows that no genuine issue of material fact exists, such that the movant is entitled to judgment as a matter of law."  Id.  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).  "'The burden of demonstrating that there are no genuine issues of material fact rests on the moving party,' and '[w]e review the evidence and the inferences that reasonably may be drawn from the evidence in the light most favorable to the nonmoving party.'"  Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012) (alteration in original) (quoting Davis v. KARK-TV, Inc., 421 F.3d 699, 703 (8th Cir. 2005)).  Nonetheless, in an FLSA exemption case such as this, the employer, NSP, has the burden of proving the employee fits within one of the FLSA exemptions.  Fife v. Harmon, 171 F.3d 1173, 1174 (8th Cir. 1999).

When analyzing a potential FLSA exemption, "the amount of time devoted to [administrative] duties, and the significance of those duties, present factual questions."  Reich v. Avoca Motel Corp., 82 F.3d 238, 240 (8th Cir. 1996) (alteration in original) (quoting Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713 (1986)).  Similarly, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury functions*, not those of a judge."  Torgerson, 643 F.3d at 1042 (emphasis added) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).[1]  These factual questions are

_____

[1]Grage demanded trial by jury pursuant to Federal Rule of Civil Procedure 38(b), Corrected First Amended Complaint and Demand for Jury Trial, Grage v.

-4-

reviewed for clear error.  <u>Reich</u>, 82 F.3d at 240.  However, "whether [employees'] particular activities excluded them from the overtime benefits of the FLSA is a question of law."  <u>Spinden v. GS Roofing Prods. Co.</u>, 94 F.3d 421, 426 (8th Cir. 1996) (alteration in original) (quoting <u>Icicle Seafoods</u>, 475 U.S. at 714).  Questions of law are reviewed de novo.  <u>Reich</u>, 82 F.3d at 240.

The FLSA requires employers to pay overtime of at least one and one-half times the regular pay rate for employees who work over forty hours in one workweek.  29 U.S.C. § 207(a)(2).  However, some employees are exempt and thus, are not entitled to overtime pay.  <u>Id.</u> § 213.  Such employees include "any employee employed in a bona fide executive, *administrative*, or professional capacity."  <u>Id.</u> § 213(a)(1) (emphasis added).  An employee fits within the administrative exemption of the FLSA if the employee is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  All three requirements must be met to qualify for this exemption.  <u>Reich</u>, 82 F.3d at 240.

<u>Northern States Power Co.-Minnesota</u>, No. 12-2590 (D. Minn. Jan. 14, 2014), ECF 87, and there is nothing in the record concerning consent to withdraw such demand as required by Rule 38(d).

-5-

## A.    Salary Basis

First, NSP must prove that Grage was "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week."  29 C.F.R. § 541.200(a)(1).  Whether Grage satisfies this requirement is not disputed.  Both parties agree Grage was a salaried employee.

## B.    Management or General Business Operations

Second, NSP must prove that Grage's "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  Id. § 541.200(a)(2).  It is undisputed that the work Grage performed was "office or non-manual work."  The issue is whether the primary duty of the office work Grage performed was related to the management or general business operations of NSP, or instead primarily related to direct, hands-on, production and distribution of energy.

The primary duty of an employee's job is "the principal, main, major or most important duty that the employee performs."  Id. § 541.700(a).  When deciding the employee's primary duty, it "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  Id.  The following factors may be considered: "relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed."  Id.  "The phrase 'directly related to the management or general business operations' refers to the *type of work* performed by the employee."  Id. § 541.201(a) (emphasis added).  For this requirement "an employee must perform work directly related to assisting with the running or servicing of the business, as

distinguished . . . from working on a manufacturing production line or selling a product in a retail or service establishment." Id.

Subsection (b) of § 541.201 lists work that is clearly related to the management or general business operations, but the list is not exhaustive. Id. § 541.201(b). Such work includes "finance; accounting; . . . quality control; purchasing; procurement; . . . *safety and health*; *personnel management*; . . . *labor relations*; . . . legal and regulatory compliance; and similar activities." Id. (emphasis added). Administrative work could also include "advising the management, *planning*, negotiating, representing the company, purchasing, promoting sales, and business research and control." Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 517 (6th Cir. 2004) (emphasis added) (quoting 29 C.F.R. § 541.205(b) (2003)). Conversely, "'production' employees . . . 'generate (i.e. 'produce') the very product or service that the employer's business offers to the public.'" Id. (quoting Reich v. John Alden Life Ins. Co., 126 F.3d 1, 9 (1st Cir. 1997)). However, if an employee is simply performing "work that is 'ancillary to an employer's principal production activity,' [the] employee[ is] administrative." Id. (quoting Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 904 (3d Cir. 1991)).

As stated above, NSP and Grage describe her primary duties as a Supervisor I quite differently. However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" should be left to the jury. Torgerson, 643 F.3d at 1042 (quoting Reeves, 530 U.S. at 150). For this reason alone, granting summary judgment for either party was improper. Here, there are fundamental factual issues that must be decided by a jury. Specifically, the jury needs to weigh the evidence and determine the primary duties Grage performed as a Supervisor I before the court can decide the legal question of whether those duties exclude her from overtime pay under the FLSA. This is not a case where a "rational trier of fact" could not possibly find in favor of the nonmoving party. Id. Factual issues aside, the district court concluded that Grage did not fall within the

administrative exemption of the FLSA because she was part of the production of NSP's gas and electricity, not an administrative employee involved in the company's management or general business operations as intended by 29 C.F.R. § 541.201. However, properly instructed, a rational jury could easily disagree. Indeed, NSP's principal endeavor is the production and distribution of energy, i.e., gas and electricity for which commodities customers remunerate NSP.

A jury could find that Grage was responsible for long-term planning of installations and maintenance, short-term planning such as daily work assignments, and that she was expected to establish and maintain a safety-focused and positive work culture for her crew. These job responsibilities fit squarely within work that § 541.201(b) lists as "directly related to management or general business operations." 29 C.F.R. § 541.201(b) (listing safety and health, personnel management, and labor relations). Also, based on NSP's description of Grage's job, she was not actually producing anything. She merely provided administrative support for the field crews that build and repair the structures needed for NSP's gas and electricity production and services. In other words, Grage "engage[d] in work that [was] 'ancillary to [her] employer's principal production activity,'" which functions the courts have determined to be administrative work. Renfro, 370 F.3d at 517 (quoting Martin, 940 F.2d at 904). Additionally, § 541.203, which lists examples of administrative exemptions, specifically includes employees who facilitate output. 29 C.F.R. § 541.203(c)-(d) (describing "[a]n employee who leads a team of other employees assigned to complete major projects for the employer" and "[a]n executive assistant or administrative assistant").

Moreover, "[a] job title alone is insufficient to establish the exempt status of an employee." Id. § 541.2. Therefore, it is irrelevant that the Supervisor I title falls under the "Production Operations" job family and "Field Operations" job function, which do not specifically list administrative tasks or support as one the duties of such Supervisor. Thus, a jury could find that Grage's primary duties were directly related

-8-

to management and general business operations, not production. At the very least, NSP has raised a genuine issue of material fact, which prevents this court from affirming the district court's grant of summary judgment in favor of Grage.

## C.    Discretion and Independent Judgment in Matters of Significance

Finally, NSP must prove that Grage's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance." Id. § 541.200(a)(3). The district court granted summary judgment in favor of Grage after concluding that NSP did not meet its burden regarding the second requirement. Thus, the third requirement for the administrative exemption was not considered. NSP argues Grage exercised considerable discretion and independent judgment in matters that were critical to NSP's success as part of her work duties. We find that here, too, a fact issue exists regarding Grage's primary duties, thus precluding a grant of summary judgment in favor of either party.

"[E]xercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." Id. § 541.202(a). It generally requires "independent choice, free from immediate direction or supervision." Id. § 541.202(c). But, this requirement can be met even if "decisions or recommendations are reviewed at a higher level." Id. In making this determination, all facts should be considered, especially the following factors:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree . . . whether the employee has authority to waive or deviate from established policies and procedures without prior approval . . . whether the employee provides consultation or expert

-9-

advice to management; whether the employee is involved in planning long- or short-term business objectives . . . and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id. § 541.202(b).

According to Grage, she had little discretion or control as a Supervisor I. She states that employees called Designers decide how and when work is handled; she simply had to follow the work orders established by the Designers. However, there is conflicting evidence that shows Grage exercised discretion as a Supervisor I when she decided how to prioritize work assignments, how to allocate work crews and resources between jobs, and how to reorganize projects in the midst of changing circumstances. A jury could find that she made these decisions without guidance after considering different courses of action and possible outcomes. Evidence on the record also shows that Grage implemented operating practices, carried out major assignments for NSP, and participated in planning business objectives. All of these duties involve a substantial amount of discretion and are specifically listed as factors to be considered when determining whether the primary duty of the employee includes the exercise of discretion and independent judgment. Id.

"The term 'matters of significance' refers to the level of importance or consequence of the work performed." Id. § 541.202(a). The duties discussed above are certainly matters of significance. The long-term and daily planning Grage allegedly performed is of extreme importance to a power company like NSP. How she performed her job as a Supervisor I directly affected the service provided to customers and thus, was of great "importance or consequence" to NSP. Id. However, the final determination on this issue ultimately requires the weighing of evidence, which is the job of a jury. Torgerson, 643 F.3d at 1042. And, because NSP has raised a genuine issue of material fact as to whether Grage exercised discretion in her job as a Supervisor I, summary judgment in favor of Grage is not proper.

-10-

## III. CONCLUSION

We reverse the district court's grant of summary judgment in favor of Grage, and because there are factual issues that must be decided, we remand for further proceedings consistent with this opinion.

_____