**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10673

_____

ROBERT BUMGARDNER,
LESLIE BURETA,
SHANNON BYERS,
LARRY LEON HARRISON,
ASHLEY BRYANT,
VICTOR LONG,

                                                  *Plaintiffs-Appellants,*

SHANNON VOLKODAV,

                                                  *Plaintiffs,*

*versus*

FORENSIC PATHOLOGY SERVICES, P.C.,
CAROL A. TERRY, M.D.,

                                                  *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01314-JPB

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Under the Fair Labor Standards Act ("FLSA"), workers in administrative roles like "legal and regulatory compliance" aren't entitled to extra pay for overtime work. Defendants-Appellees Forensic Pathology Services, P.C. ("FPS"), and its CEO, Dr. Carol A. Terry, contend that FPS's forensic death investigators, who investigate unexpected or non-natural deaths in Gwinnett County, Georgia, fit this category.

FPS operates under the authority of the Georgia Death Investigation Act. Naturally, the company takes care to examine and remove bodies from the scene of death only if the law authorizes it to do so. FPS's investigators make sure they have jurisdiction over a body before diving into their investigation. In Defendants' view, this makes the investigators "legal compliance" employees who don't have a right to overtime pay.

Defendants are mistaken. Our precedent in *Fowler v. OSP Prevention Group, Inc.*, 38 F.4th 103 (11th Cir. 2022), squarely forecloses their argument.

That decision makes clear that "administrative" employees help run a business by setting standards for others or by performing

the general functions involved in running any business. The exemption doesn't apply to line-level "production" employees who produce the goods or services that the business offers.

Plaintiffs-Appellants, six former forensic death investigators at FPS, fall into this second category. Their factfinding helped produce FPS's core "product" of death-investigation services. FPS and Dr. Terry provide no authority to support their view that if an employee adheres to state law while producing their employer's core product, that somehow makes their work "administrative" within the meaning of the FLSA. And if that were so, huge swaths of the American workforce would be subject to the FLSA's "administrative" exemption, meaning the FLSA's wage protections would not apply to them.

We therefore conclude that the district court erred by denying Plaintiffs' motion for judgment as a matter of law on Defendants' administrative-exemption defense. This defense was the sole basis for the jury's verdicts for FPS and Dr. Terry. So we vacate the court's judgment and remand the case for a new trial.

## I.     BACKGROUND

### A. *The Parties*

Dr. Terry is a forensic pathologist who functions as the chief medical examiner for Gwinnett County, Georgia. As chief medical examiner, Dr. Terry conducts post-mortem examinations of deaths in Gwinnett County that are sudden, unexplained, or due to non-

natural causes.  She was appointed to the role under the Georgia Death Investigation Act.

Dr. Terry also is the chief executive officer of FPS.  Gwinnett County and FPS have contracted so that the company operates as the Gwinnett County Medical Examiner's Office.  FPS employs several forensic death investigators, who gather evidence to help Dr. Terry determine decedents' causes of death.  It also employs forensic technicians, who assist Dr. Terry with autopsies.

Plaintiffs-Appellants are six former employees of FPS, where they worked as death investigators.  One of them, Bumgardner, was a "senior" investigator.

### B.  The Forensic Death Investigator Role

FPS's death investigators operate as Dr. Terry's "eyes and ears" to help her determine the cause and manner of a person's death.  As Dr. Terry explained at trial, she is not personally able to visit every scene of death or engage with every decedent's family members.  So FPS's investigators collect evidence on her behalf. They take photographs of the scene, speak with law-enforcement officials and witnesses, and examine the body for injuries and signs of natural disease.

Not every death falls within the chief medical examiner's jurisdiction, though.  Georgia law requires a medical examiner to inquire into certain categories of deaths, mainly those that are sudden, unexplained, or due to non-natural causes.  *See* Ga. Code Ann. § 45-16-24(a)(1)–(10), (b).  So the first thing FPS investigators do when a death is reported is to determine whether it falls within Dr.

Terry's jurisdiction.  Only about one-third of the deaths reported to FPS do.

If the investigator concludes that a body needs further examination, she sends it to the medical examiner's office.  To do so, the investigator tags the body, ensures it is placed in a body bag, and calls a transport service to bring the body in.  Dr. Terry then conducts an examination, which can range from examining the outside of the body to a full autopsy.  The investigators serve as a "conduit" between Dr. Terry and the decedent's family, gathering additional information from family members and providing updates about the chief medical examiner's conclusions.  The investigators later memorialize the information they've learned in a written report that forms part of the official medical examiner's report.

One plaintiff, Robert Bumgardner, had additional responsibilities as a senior investigator.  Sometimes, he would recommend that FPS hire certain people as investigators, and he once gave input on whether to fire an investigator.  Bumgardner also shared responsibility for training new investigators after they began at FPS. Yet Bumgardner continued to perform the same investigative functions as FPS's other forensic death investigators, so he was able to swap shifts with non-senior investigators.

### C. Procedural History

In 2021, the Department of Labor investigated FPS's compliance with the FLSA.  The Department informed Dr. Terry that its investigation revealed violations of the FLSA's minimum-wage,

overtime, and recordkeeping requirements.  But the Department ultimately declined to litigate.

Instead, a group of former forensic death investigators ("Plaintiffs") sued FPS and Dr. Terry (collectively, "Defendants") in April 2022 under the FLSA's private right of action.  Plaintiffs alleged that Defendants violated the FLSA's requirement to pay one-and-a-half times the normal rate of pay for overtime work.

After discovery, Defendants moved for summary judgment. As relevant here, they asserted an affirmative defense that the FLSA's overtime provision doesn't apply to Plaintiffs because, they claimed, Plaintiffs qualify for the FLSA's administrative exemption.[1]  After reviewing our decision in *Fowler v. OSP Prevention Group, Inc.*, 38 F.4th 103 (11th Cir. 2022), the district court denied Defendants' motion.

Nine months later, the district court conducted a seven-day trial.  Before the judge charged the jury, Plaintiffs moved for judgment as a matter of law on whether the FLSA's administrative exemption applied.  The court denied the motion and instructed the jury, which reached verdicts favoring Defendants as to all seven Plaintiffs.  For each, the jury's sole finding was that the FLSA's administrative exemption applied, making that Plaintiff ineligible for overtime pay.  Plaintiffs renewed their motion for judgment as a

---

[1] Defendants' motion also asserted that the FLSA's executive exemption applies to Bumgardner, that certain time Plaintiffs put in at FPS doesn't constitute "work," and that Plaintiffs' claims were time-barred.  The district court denied the motion on these grounds as well.

matter of law on the administrative exemption.  The court again denied the motion.

Ultimately, the clerk entered judgment in favor of Defendants.  Six Plaintiffs timely appealed.

## II.    LEGAL STANDARD

We review de novo a district court's ruling on a motion for judgment as a matter of law.  *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).

A party may move under Rule 50(a) for judgment as a matter of law after a party has been fully heard on an issue but before the court submits the case to the jury.  Fed. R. Civ. P. 50(a).  After judgment, the party may renew its motion under Rule 50(b).  The legal standard is the same under either rule.  *McGinnis*, 817 F.3d at 1254.  The court must determine whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue."  Fed. R. Civ. P. 50(a)(1).  The court "must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party," but it must not resolve conflicts in the evidence or make credibility determinations.  *McGinnis*, 817 F.3d at 1254 (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)).

## III.    DISCUSSION

At the close of trial, the jury reached verdicts in Defendants' favor as to all seven Plaintiffs.[2]  These verdicts each made a single finding: that Defendants had established their affirmative defense that the investigator fell within the FLSA administrative exemption.

Plaintiffs argue that the district court should have granted their renewed motion for judgment as a matter of law on this issue for any of three reasons.  First, they contend that Defendants provided no evidence that Plaintiffs' primary duty was "the performance of office or non-manual work directly related to the management or general business operations of the employer."  29 C.F.R. § 541.200(a)(2).  Second, and relatedly, they assert Defendants failed to present evidence that their primary duty included the

---

[2] The district court previously recognized that an eighth plaintiff, Dallas Williams, was not a part of the case by the time the court entered its pretrial order. Its Consolidated Pretrial Order listed seven Plaintiffs—omitting Williams's name—as the "correct and complete" set of Plaintiffs.  And the Order "supersede[d]" and amended the pleadings "to conform hereto."  ECF No. 82 at 25 ¶ 29; *cf.* Fed. R. Civ. P. 16(c)(2)(B).  For that reason, Williams's earlier and ineffective attempt to voluntarily dismiss himself from the case does not bear on our jurisdiction.  To be sure, Williams filed his purported notice of voluntary dismissal after Defendants answered the complaint, and it lacked the stipulation of all parties who had appeared.  *See* Fed. R. Civ. P. 41(a)(1)(A).  But the district court's Consolidated Pretrial Order later validly dismissed Williams from the case.  So the clerk's judgment following trial was a final, appealable judgment.  *See* 28 U.S.C. § 1291.  We therefore have no need to consider the court's later judgment *nunc pro tunc*, apparently placed on the docket to resolve concerns over Williams's status.

exercise of discretion and independent judgment about matters of significance. And third, Plaintiffs posit that the FLSA's "first responder regulation"—which generally makes the FLSA's executive, administrative, and professional exemptions inapplicable to police officers, fire fighters, investigators, paramedics, and similar employees, 29 C.F.R. § 541.3(b)(1)—excludes Plaintiffs from the administrative exemption.

We don't need to go beyond the first argument. Under a straightforward reading of our precedent, Plaintiffs' role as investigators doesn't directly relate to the "management or general business operations" of FPS. 29 C.F.R. § 541.200(a)(2).[3] That shortcoming is dispositive. So the district court erred in holding that the jury had a sufficient evidentiary basis to conclude that the FLSA administrative exemption covers Plaintiffs.[4]

### A. The Administrative Exemption

The FLSA carves out employees "employed in a bona fide executive, administrative, or professional capacity" from its minimum-wage and overtime protections. 29 U.S.C. § 213(a). It also

---

[3] An employee can also qualify for the FLSA administrative exemption if his primary duty directly relates to the "management or general business operations" of his employer's customers. 29 C.F.R. § 541.200(a)(2). No one argues that Plaintiffs fall within the exemption for that reason.

[4] Because the parties presume that the question is one of factual sufficiency, we consider this appeal on those grounds. But this opinion should not be read to take a position on that premise. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713 (1986) (characterizing "whether an exemption to the FLSA applies in a particular case" as a "legal question").

makes that carveout subject to the way "such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." *Id.*

The Secretary defines an "employee employed in a bona fide administrative capacity" as any employee:

> (1) Compensated on a salary or fee basis that exceeds a certain rate of pay;
>
> (2) "Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and
>
> (3) "Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a). We have explained that a defendant must satisfy each of these prongs to show that the exemption applies. *Fowler*, 38 F.4th at 106.

The Secretary has given further guidance about the second prong—that is, evaluating whether the employee's primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). To meet that requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as

distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a).

The parties don't meaningfully dispute which tasks make up the investigators' primary duty.[5] Instead, the relevant question is whether that duty directly relates to FPS's "general business operations" within the meaning of the FLSA administrative exemption. And our precedent controls that question.

### B. *Factfinding Investigators Under* Fowler

Our decision in *Fowler* requires us to conclude that Plaintiffs aren't administrative employees. In that case, we considered whether two property-damage investigators who worked with broadband infrastructure fell within the FLSA administrative exemption. We held that they didn't satisfy the exemption's second prong because they weren't part of their employer's management and "did not run or service the general business operations of the company." *Id.* at 114.

Two aspects of *Fowler* control the result here. First, we explained how the administrative exemption's second prong distinguishes administrative work from production work. Second, we

---

[5] The parties debate the degree to which those tasks constitute "office or non-manual work," another aspect of the exemption's second prong. 29 C.F.R. § 541.200(a). Because Plaintiffs' primary duty doesn't directly relate to FPS's "general business operations," we don't need to wade into that dispute.

applied that understanding to factfinding investigators who were highly analogous to the death investigators in this case.

### 1. The Administration/Production Distinction

The more general lesson from *Fowler* is the difference between production and administrative work. Production employees "perform the core function of the business"—producing the goods or services that the business offers to the public. *Id.* at 110–11. Administrative employees, in contrast, have a primary duty that directly relates either to managing others or to "running [the] business" as a whole. *Id.* at 113.

To flesh out this distinction, we reviewed the long list of "functional areas" the Secretary of Labor identifies as administrative work. *Id.* at 109–10. Those areas include accounting, procurement, finance, human resources, and "legal and regulatory compliance." *See* 29 C.F.R. § 541.201(b). Each is the sort of support function necessary for nearly any business. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2nd Cir. 2009) (distinguishing the work to produce the "primary output of a business" from "general administrative work applicable to the running of any business").

We identified a common thread in these functional areas. Employees performing these functions often help to define policies for a business's production employees to follow. For example, a human-resources officer might develop procedures for employees to report unsafe or inappropriate conduct by their peers. So the exemption's second prong "draws a line between administrative employees, who help run the business by setting standards, and

'production' employees, who help the business run by following the standards that have been set for them." *Fowler*, 38 F.4th at 110.

Of course, an employee can help run or service the business without creating policies. For instance, consider a member of a finance department who processes payments to a company's vendors. That employee is administrative because she "is simply performing 'work that is ancillary to an employer's principal production activity.'" *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1056 (8th Cir. 2015) (alterations accepted) (quoting *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 517 (6th Cir. 2004)).

To put it another way, the FLSA's administrative exemption generally applies to "back office" employees who manage others or perform a supporting function that "assist[s] with the running or servicing of the business" as a whole. 29 C.F.R. § 541.201(a). It doesn't apply to line-level production employees—whether they work on a traditional "manufacturing production line," *id.*, or at a business that "provide[s] investigative services," *Fowler*, 38 F.4th at 111.

### 2. Investigators as Production Employees

After explaining the difference between production and administrative work, we then applied the exemption's second prong to the "factfinding investigators" in *Fowler*. *Id.* at 112. Those investigators examined damage to broadband infrastructure, determined who was liable for the damage, and calculated how much repairs would cost. *Id.* at 106–07. Considering their company's

"core function of damage investigations," we concluded the plaintiffs' "investigative factfinding duties amounted to production work." *Id.* at 114. So, we said, they weren't covered by the administrative exemption. *Id.*

The same principle governs here—simply swap out "damage investigations" for "death investigations." Just as in *Fowler*, Plaintiffs in this case were involved in production of their employer's core service—death investigations. Like the *Fowler* investigators, Plaintiffs similarly "interviewed witnesses, . . . preserved evidence, took photographs, and . . . wrote reports and submitted them to their supervisors." *Id.* at 113. And the parties agree Plaintiffs had to follow "prescribed procedures" when doing so, even if they used their professional "judgment to decide the order of the steps in their investigations and what inferences to draw from the data they gathered." *Id.* So no matter how much their work was "essential to the service [FPS] provides," the investigators didn't "run or service the general business operations of the company." *Id.* at 113–14.

## C. Compliance with the Georgia Death Investigation Act

Defendants' contrary argument stretches the FLSA regulation's reference to "legal and regulatory compliance" far past its breaking point. Because Plaintiffs must first determine whether they have jurisdiction over a case under the Georgia Death Investigation Act before they perform their forensic investigation, Defendants contend that 100 percent of Plaintiffs' investigative work

directly relates to "legal compliance" with the Georgia Death Investigation Act. Indeed, Defendants label the jurisdictional determination "the most critical part of FPS's general [business] operations." This view incorrectly conflates any employee's adherence to the law with the back-office function of "legal compliance."

Legal compliance was the only ground Defendants offered the jury to conclude that Plaintiffs met the administrative exemption's second prong. Again, that prong requires an employee's primary duty to be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29. C.F.R. § 541.200(a)(2). In closing arguments, Defendants' counsel told jurors that "legal compliance" was the single, "key" way that Plaintiffs' primary duty related to FPS's general business operations. And he elaborated that "determining legal compliance" with the Georgia Death Investigation Act satisfied the second prong.

The record shows the jury had the same focus. After less than a half-hour of deliberation, the jury submitted its only question, asking for a more specific definition of the regulation's reference to "legal and regulatory compliance." The court explained that the regulation had no further detail and asked the jurors to use their "best judgment." Less than 45 minutes later, the jury returned verdicts against all seven Plaintiffs. But the record can't support this finding.

### 1. The Scope of "Legal Compliance"

Defendants point to no evidence that Plaintiffs' primary duty directly relates to the type of "legal compliance" relevant to the FLSA exemption. Rather, Defendants' attempt to reframe investigative work as legal compliance misapprehends the governing regulation. Even if we focus on the investigators' determination of whether their office had jurisdiction over a given death, no evidence indicates that this function was their primary duty.

We'll start with the argument Defendants make on appeal. Defendants are plainly wrong to assert that Plaintiffs' core investigative duties constitute "legal compliance." Complying with applicable laws and regulations is critical for *every* regulated business. So accepting Defendants' argument that complying with the Georgia law that governs their industry somehow turns Plaintiffs into administrative employees would have an extraordinary result. It would mean that all employees in regulated industries are "administrative." But that position has no basis in law.

First, it would dissolve the administration/production distinction *Fowler* articulates. As we've noted, under Defendants' theory, even the most paradigmatic line-level production employee would fall within the administrative exemption if his work must comply with applicable statutes or regulations. But Defendants provide no basis to think that the FLSA or related regulations contemplate this outcome.

Second, in fact, the contrary is true. The regulation provides examples of roles that are or are not subject to the administrative

exemption, and these examples cut strongly against Defendants' view. The regulation explains that "[p]ublic sector inspectors or investigators" in areas such as fire safety, building code inspection, or health and sanitation generally don't satisfy the second prong. 29 C.F.R. § 541.203(j). But statutes and regulations govern public employees in these roles far more tightly than they do private employees. And the more that applicable law imposes "known standards or prescribed procedures," the less appropriate the administrative exemption becomes. *Id.*

The regulation also discusses many nuances about which employees in the financial-services industry—a quintessential regulated industry—fall under the administrative exemption. *Id.* § 541.203(b). If Defendants' view were right, this detail would be unnecessary because all financial-services employees' roles would relate to legal and regulatory compliance.

Every worker must take care to ensure he complies with the law. But a delivery driver doesn't become a "legal compliance" employee when he stops for a red light.

Next, we consider the one responsibility Defendants identify that is even arguably administrative "legal compliance"—the investigators' initial determination of statutory jurisdiction. But even if we assumed that this duty can be deemed administrative work, that wouldn't solve Defendants' problem.

At the outset, it's unclear that the jurisdiction determinations are the sort of "legal compliance" work the FLSA exemption

contemplates. The investigators in *Fowler* were non-exempt production employees, even though they "review[ed] permits and applicable dig laws" and recommended who was legally liable for property damage according to set criteria. *Fowler*, 38 F.4th at 108, 110. Similarly, the jury heard unrebutted testimony that investigators determining jurisdiction had to ask the person reporting a death a list of "mandatory" questions the investigators referred to as the "green sheet." And Dr. Terry testified that she had the ultimate call about jurisdiction.

But even if Defendants could show that these jurisdiction determinations qualify as "legal compliance," they have a more fundamental problem: no evidence suggests that the investigators' "primary duty" was determining jurisdiction. Defendants do not even contend otherwise. And the record reflects that Plaintiffs' primary duty involved determining the causes of death in cases over which they had jurisdiction. So Defendants' description of Plaintiffs' investigative work as 100 percent directly related to "legal compliance" with the Georgia Death Investigation Act betrays an implicit recognition that Defendants could not prove that at least half of Plaintiffs' work directly related to true "legal compliance."

And that is enough to decimate their administrative-exemption defense.

As we've explained, the administrative exemption applies to a worker only if his "primary duty" directly relates to the "management or general business operations" of his employer or its customers. 29 C.F.R. § 541.200(a)(2). An employee's primary duty is

the "principal, main, major or most important duty that the employee performs," looking at factors including duties' relative importance, the time spent on exempt tasks, and the amount of direct supervision. 29 C.F.R. § 541.700(a).

Defendants emphasize that an employee will generally satisfy this second prong if more than half his work is exempt. 29 C.F.R. § 541.700(b). But they conspicuously don't argue that determining jurisdiction comes anywhere near this threshold. To the contrary, Defendants' brief emphasizes testimony that minimizes the amount of time Plaintiffs spent on determining jurisdiction.

Plus, the testimony consistently shows that the investigators' central function was gathering evidence in death investigations. Dr. Terry herself called the investigators "my eyes and ears" to "collect[] information on my behalf to help me determine cause and manner of death." Defendants' other witness called determining the cause and manner of death the "ultimate goal for the whole case." To be sure, the jury heard a witness testify that determining jurisdiction was one of the investigators' primary responsibilities and another witness agree it was a "fundamental" component of the job. But without any evidence showing it took a majority share of investigators' time—and considering evidence that negates this possibility—this testimony can't establish that determining jurisdiction was more important to the investigators' roles than investigative work.

Like the investigators in *Fowler*, the death investigators' core work fundamentally "focused on diligent and accurate factfinding

according to guidelines set by their employer." 38 F.4th at 110. So a proper understanding of the scope of "legal compliance" dictates that the administrative exemption doesn't apply.

### 2. *Defendants' Attempts to Distinguish* Fowler

Perhaps recognizing that it's fatal to their defense, Defendants try to distinguish *Fowler* in four ways. They emphasize that the investigators there (1) had only one client, (2) followed standard operating procedures memorialized in two documents, (3) typically concluded that the damage was caused by excavation or digging, and (4) did not have an "awesome responsibility" like determining whether FPS had statutory jurisdiction over a death. None of these arguments is persuasive.

First, Defendants don't explain why a business's number of clients affects whether a given employee's work is administrative. And we don't see why it would. But in any event, FPS's work also focused on just one principal client—Gwinnett County.

The second and third counterarguments fail for similar reasons. As the evidence showed during the trial, FPS's investigators had to follow written guidelines on their "green sheet" and employment manual when deciding whether the office had jurisdiction over a death. Defendants suggest that, once the investigator reached the scene, the causes of death varied more than the causes of property damage in *Fowler*. But that's a distinction without a difference. Even assuming Plaintiffs had to exercise more discretion than the *Fowler* investigators, the degree of discretion goes to the separate, third prong of the administrative exemption. *See* 29

C.F.R. § 541.200(a)(3); *Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1318 (11th Cir. 2022) (analyzing third prong). And we have no need to reach that third prong because, as we've explained, Defendants fail on the second. Nor does the exercise of judgment somehow transform Plaintiffs from frontline, factfinding investigators to managers or back-office support staff.

Finally, Defendants misstep by arguing that Plaintiffs' jurisdictional determinations were so significant that they must be administrative. We rejected the same argument in *Fowler*, 38 F.4th at 114. So it can fare no better here.

## IV.    CONCLUSION

For the foregoing reasons, we reverse the district court's denial of Plaintiffs' renewed motion for judgment as a matter of law on Defendants' administrative-exemption defense. We also vacate the district court's judgment against Plaintiffs and remand for further proceedings consistent with this opinion.

**REVERSED, VACATED, and REMANDED.**